**FILED**

JAN 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.                    )
RIVERS CORRECTIONAL INSTITUTION         )
145 PARKERS FISHERY ROAD                )
P.O. BOX 630                            )
WINTON, N.C. 27986                      )
REGISTER NO. 11324-045                  )
                                        )
        Plaintiff,                      )
                                        )
    V                                   )
                                        )
ALBERTO R. GONZALES, U.S.               )
ATTORNEY GENERAL, IN HIS                )
INDIVIDUAL AND OFFICIAL CAPACITY.       )
U.S. ATTORNEY GENERAL                   )       CASE NUMBER  1:07CV00199
DEPARTMENT OF JUSTICE                   )
CONSTITUTION AVE & 10th St., NW         )       JUDGE: James Robertson
WASHINGTON, D.C. 20530                  )
                                        )       DECK TYPE: Pro se General Civil
HARLEY LAPPIN, DIRECTOR OF BUREAU       )
OF PRISONS, IN HIS INDIVIDUAL AND       )       DATE STAMP: 01/30/2007
OFFICIAL CAPACITY.                      )
FEDERAL BUREAU OF PRISONS               )
320 FIRST STREET, NW                    )
WASHINGTON, D.C. 20534                  )
                                        )
FRANCIS J. HARVEY, SECRETARY OF THE     )
ARMY, IN HIS INDIVIDUAL AND OFFICIAL    )
CAPACITY.                               )
SECRETARY OF THE UNITED STATES ARMY     )
DEPARTMENT OF DEFENSE                    )
THE PENTAGON                            )
WASHINGTON, D.C. 20301                  )
                                        )
        Defendants.                     )
_____ )

JURY ACTION

## COMPLAINT

COMES NOW PLAINTIFF, Bobby Ray Curry, Jr., pro se, and complains

against Defendants as follows:

### PRELIMINARY STATEMENT

1. This is a Bivens action to sue defendants under the First

Amendment and the Religious Freedom Restoration Act (RFRA) which

**RECEIVED**

JAN 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

protects the constitutional right of individuals to free exercise
of religion under the First Amendment of the Constitution.alleging
infringement of his right to religion-based diet seeking damages
and injunctive relief.

2.   This is a Bivens action to sue defendants under the Eighth
Amendment alleging infringement of his right to a clean air
environment when they knowingly expose him to levels of second-
hand smoke that pose an unreasonable risk of  serious damage to
his future health seeking damages and injunctive relief.

### JURISDICTION AND VENUE

3.   This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1332,
1343, and 1391.

4.   There is true diversity of citizenship and the amount of
recoverable relief for damages exceeds $75,000.00.

### PARTIES

5.  The plaintiff, Bobby Ray Curry, Jr., is a military prisoner
from North Carolina serving a sentence imposed by an Army Court on
December 10, 1993 in Wurzburg, Germany. The plaintiff was con-
fined in a military prison, United States Disciplinary Barracks
(USDB), at Fort Leavenworth, Kansas until he was transferred to
Federal Bureau of Prisons' (hereinafter "BOP") custody per
Memorandum of Agreement between the Department of the Army and
BOP dated May 27, 1994. The Plaintiff entered Rivers Correctional
Institution (hereinafter "CI Rivers") on June 29, 2005.

6.  Defendant Alberto R. Gonzales is employed as the Unites States
Attorney General at the Department of Justice in Washington, D.C..
He is legally responsible for the overall operation of the Depart-

2

ment and each institution under its jurisdiction, including Bureau of Prisons.

7.  Defendant Harley Lappin is employed as Director of Bureau of Prisons in Washington, D.C.. He is legally responsible for the overall operation of the Bureau of Prisons and for the welfare of all inmates of the Bureau of Prisons.

8.  Defendant Francis J. Harvey is employed as Secretary of the Army at the Department of Defense in Washington, D.C.. He is legally responsible for the overall operation of the U.S. Army and for the welfare of all Army military prisoners.

## STATEMENT OF FACTS

9.  On or about February 22, 2000, BOP executed a contract agreement with The GEO Group, Inc. (contract no. J1PCc-005) to house DC prisoners as continual compliance with the 1997 Revitalization Act mandated by Congress. The GEO Group, Inc. owns and operate CI Rivers, and are to perform services in compliance with the U.S. Constiution, all applicable federal, state and local laws and regulations, American Correctional Association Standards, North Carolina Admin Code (5 NCAC 2F.2500-2504, et. seg.) to establish a "smoke free" clean air environment in accordance to provisions of 28 C.F.R. 551.160-164, BOP Program Statement (P.S.) 1640.04, and CI Rivers policy RCI-03.016.

10.  It is anticipated that the BOP will predominately designate individuals committed as DC sentenced felons to the institution. However, the BOP may designate any inmate within its custody utilizing the same designation criteria as used at other BOP facilities. P.S. 5100.06, Security Designation and Custody

<u>Classification Manual</u>, outlines the procedures for designating <u>inmates</u>. Military prisoners do no meet any of the criteria in P.S. 5100.06 for designation to a Non-Federal or contract prison. CI Rivers is a Non-Federal contracted prison.

11. Interstate Corrections Compact creates agency relationship between the defendants and The GEO Group, Inc.

12. BOP has an on-site representative, Mr. Thomas R. Christensen, who oversees the daily operation of CI Rivers to ensure The GEO Group, Inc. is in compliance with the contract and Title 18 § 4042, Duties of Bureau of Prisons.

13. The defendants have a "continuing responsibility" not to sit idly by as their inmates in CI Rivers custody have their rights violated. (See Jackson v. District of Columbia at [2], 89 F.Supp.2d 48 (D.D.C.)).

**COUNT 1: WHETHER DENIAL OF RELIGIOUS MEAL FOR PLAINTIFF BECAUSE HE DOES NOT PRACTICE JEWISH FAITH VIOLATES THE RELIGIOUS FREEDOM RESTORATION ACT (RFRA), 42 U.S.C. § 2000bb et seq., WHICH APPLIES TO CLAIMS OF FEDERAL PRISONERS, 349, F.3d 399, 401 (7th Cir. 2003)) AS WELL AS THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION?**

**COUNT 2: WHETHER THE DEFENDANTS VIOLATED THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION WHEN THEY FAILED TO DIRECT CI RIVERS OFFICIALS TO EVALUATE PLAINTIFF WITH REGARD TO THE SINCERITY OF HIS RELIGIOUS BELIEFS AND WHEN THEY FAILED TO DIRECT CI RIVERS OFFICIALS TO STOP THE PRACTICE OF DISALLOWING KOSHER MEAL TO PRISONERS WHO DO NOT FOLLOW THE JEWISH FAITH?**

14. It was determined by the chaplain at FCI Mckean in Pennsylvania that plaintiff has a bona fide religious belief. The chaplain certified plaintiff for religion-based diet participation and recorded plaintiff's religious affiliation in the BOP sentry computer system on November 14, 2004. (See Inmate Profile.)

4

15.  While in transit to CI Rivers from FCI McKean, the plaintiff received kosher meals at both Lewisburg's and Atlanta's holdovers.

16.  On June 29, 2005, the plaintiff arrived at CI Rivers, and forwarded an Inmate Request to Staff to Chaplain Brown informing him that he is to receive kosher meals due to his religious beliefs and that his affiliation is recorded in the BOP sentry. Chaplain Brown did not respond or return the Request.

17.  On July 1, 2005, Plaintiff saw Chaplain Brown during orientation and told him that he had forwarded an Inmate Request to Staff to him stating that he received kosher meals at his last institution due to his religious beliefs, and Chaplain Brown told plaintiff that only those inmates of the Jewish faith are allow kosher meals at Rivers, and Chaplain Brown said that he had only two (2) inmates at that time receiving kosher meals.

18.  On July 13, 2005, I forwarded an Inmate Request to Staff to Chaplain Brown telling him again that I was receiving kosher meals at my last institution and since I am unable to receive kosher meals at Rivers, I would like to be placed on a vegetarian diet. (See exhibit 1).

19.  On August 8, 2005, I finally received an Authorization for Religious Diet Participation for Vegetarian Diet through institution mail. I filled it out and forwarded it back through institution mail (See Authorization for Religious Diet Form).

20.  On August 11, 2005, The Authorization for Religious Diet Participation for Vegetarian Diet was returned to me through institution mail disapproved by Chaplain Brown with a message at the bottom "check w/medical per your medical diet" (See Authorization

5

for Religious Diet Form).

21. On September 16, 2005, I forwarded an Inmate Request to Staff
to Ms Wolfe, Food Service Manager, inquiring about the nutritional
value of the End and Pieces of meat that is served to inmates at
CI Rivers (See exhibit 2).

22. On September 18, 2005, I forwarded Chaplain Brown an Inmate
Request to Staff asking how can he disapprove me for both kosher
and vegetarian diet, when I wasn't interviewed for either (See
exhibit 3).

23. On September 19, 2005, Ms Wolfe, Food Service Manager, answered
my Request admitting that inmates at Rivers are being served End
and Pieces of meat, and said inmates are receiving their 4 oz which
meets RDA requirements (See exhibit 2).

24. On September 22, 2005, Chaplain Brown placed me on a call-out
and during the appointment he told me that medical had placed me
on a medical diet on July 5, 2005. I was unaware that I was placed
on a medical diet and when I asked kitchen staff at dinner whether
I was on a medical diet, I was told no. So I forwarded an Inmate
Request to Staff to Medical to find out if they had placed me on
a medical diet (See exhibit 4).

25. On September 26, 2005, I received the Inmate Request to Staff
from medical stating that I was placed on a medical diet June 29,
2005 because I am in the high blood pressure clinic (See exhibit 4).

26. On May 2, 2006, I forwarded an Inmate Request to Staff asking
Chaplain Brown to provide me the policy which states only those
of the Jewish faith are allowed kosher meals and his answer was
I should read Rivers religious services policy (See exhibit 5).

27.  On May 9, 2006, I forwarded an Inmate Request to Staff to Chaplain Brown stating that I read Rivers religious services policy and I could not find in it anywhere that states only those of the Jewish faith are allowed kosher meals. Chaplain Brown forwarded me a copy of a page of RCI policy with a portion highlighted (See exhibit 6).

28.  On May 19, 2006, I forwarded an Inmate Request to Staff to Chaplain Brown for clarification of the portion he highlighted stating that the chaplain is the approving authority for religion-based diets. Chaplain Brown stated that he is required to abide by Rivers policy (See exhibit 7).

29.  Chaplain Brown and Warden Synder are favoring the Jewish faith over other religions in violation of the First Amendment.

30.  "All sincerely held religious beliefs are protected by the First Amendment; officials may not favor certain religions over others." Cooper v. Pate, 378 U.S. 546 (1964).

31.  Prisoners have a First Amendment right to a diet conforming to their religious beliefs. Beerheide b. Suthers, 286 F.3d 1179 (10th Cir. 2002).

32.  On July 23, 2006, I forwarded an Inmate Request to Staff to Ms Wolfe, Food Service Manager, because I wanted to know why those on medical diets receiving the same meals as regular diets except for the dessert. Ms Wolfe's answer was that there are days on the menu when those on medical diets receive the same as those on regular diets except for the dessert (See exhibit 8).

33.  On December 12, 2006, I received a letter from ACLU of North Carolina with a copy of a letter that ACLU sent to Warden Synder

regarding the denial of my request for religious diet. ACLU
asked Warden Synder to respond by December 27, 2006 (See exhibit
9).

34.  On December 18, 2006, Chaplain Brown called me for an inter-
view because of the ACLU letter to Warden Synder to discuss my
religious affiliation for the first time, however Chaplain Brown
still denied me a kosher diet.

35.  On December 19, 2006, I gave Chaplain Brown an Inmate Request
to Staff because I wanted a record of our conversation. Chaplain
Brown attempted to cover his tracks by saying I misguide what he
said as in past interviews when in fact December 18, 2006 is the
only time he inquired about my religious affiliation. He asked
that I provide information to support my claim, and he even went
as far as offering me a vegetarian diet; a diet he has disapproved
in the past (See exhibit 10).

36. Neither the vegetarian or medical diet at CI Rivers are
religion-based diets, although Chaplain Brown considers vegetarian
diet a religious diet.

37.  The only difference between a regular and vegetarian diet is
you get cheese or peanut butter for meat substitute.

<u>COUNT 3:</u>   <u>WHETHER THE DEFENDANTS VIOLATED THE RELIGIOUS LAND USE</u>
         <u>AND INSTITUTIONALIZED PERSONS ACT (RLUIPA)?</u>

38.  The GEO Group, Inc. receives money from BOP which is the
federal government to operate CI Rivers. This financial assistance
gives Congress the right to pass laws that it might not otherwise
be able to pass. <u>Mayweathers v. Newland</u>, 314 F.3d 1062 (9th Cir.
2002); Charles v. Verhagen, --F.3d---, No. 02-3572, 2003 WL

8

22455960 (7th Cir. Oct 30, 2003).

## COUNT 4: WHETHER THE DEFENDANTS VIOLATED THE EIGHTH AMENDMENT OF THE CONSTITUTION WHEN THEY ACTED WITH DELIBERATE INDIFFERENCE WHEN THEY KNOWINGLY EXPOSE PLAINTIFF TO LEVELS OF SECOND-HAND TOBACCO SMOKE "THAT POSE AN UNREASONABLE RISK OF SERIOUS DAMAGE TO HIS FUTURE HEALTH?

39.  I am a nonsmoker and have never smoked, yet I am being exposed to high levels of poisonous toxins and chemicals from second-hand smoke known as environmental tobacco smoke (ETS) at CI Rivers.

40.  At CI Rivers, the main and the rear recreation yards are the designated smoking areas. Due to the way officials regulates the flow of traffic, I am directed to cross the main yard several times a day exposing me to second-hand smoke (See exhibit 12).

41.  Whenever I leave the dining facility, officers outside the dining facility directs me to cross the main yard to get back to the housing unit. The only time I am not directed to cross the main yard is when it is raining. On rainy days, several smokers are smoking on the sidewalks.

42.  The cigarette lighters and designated smoking area signs are posted near all the entrance/exit to the recreation yards in violation of 28 C.F.R. 551.163(a), BOP P.S. 1640.04, and CI Rivers policy RCI-03.016 (See exhibit 13).

43. At times there are as many as thirty (30) smokers smoking at these entrances/exits leaving nonsmokers no choice but to walk through a cloud of poisonous toxins and chemicals from second-hand tobacco smoke to enter or exit the yards.

44. You must use these entrances/exits whether you are going to the gym, chapel, or library at night, because other routes are closed. There are hundreds of smokers on the recreation yards.

45.  The first smokers I encounter when leaving the housing unit
are within ten (10) feet of the building.

46.  The nonsmoking areas are inside buildings and on the side-
walks surrounding the main yard, however smokers constantly smoke
on the sidewalks and in the units (See exhibit 14 & 15).

47.  Even if the smokers would not smoke on the sidewalks which
includes staff, I would still be exposed to ETS because the
sidewalk and main yard are located so close together.

48.  BOP P.S. 1640.04 states, "Medical and public health authorities
have established the hazards of tobacco smoke. Of particular
concern are the risks posed to nonsmokers by passive inhalation
of environmental tobacco smoke (ETS). The Surgeon General has long
concluded that scientific research indicated that second-hand smoke
is a cause of lung disease in otherwise healthy nonsmokers."

49.  Warden Synder responded to an Inmate Request to Staff,
"This is not a smoke free environment. The main yard is a designated
smoking area for inmate population. The recreation yard is a very
large open space and once you are on the yard, it is your decision
to remain in the designated smoking areas or not to remain in the
designated smoking area." (See exhibit 16).

50.  An article in the USA Today newspaper dated June 28, 2006
titled Secondhand smoke debate 'over', states that the U.S.
Surgeon General says secondhand smoke is a  health risk at any
level and the 700-page report cites "massive and conclusive
scientific evidence" of the "alarming" public health threat posed
by secondhand smoke and finds smoking bans are the only way to
protect non-smokers. The Surgeon General went on to say, "The

debate is over" and the science is clear. "Secondhand smoke is not a mere annoyance but a serious health hazard."

51. The defendants have acted with "deliberate indifference" to plaintiff's health or safety because they know that plaintiff face a substantial risk of harm due to secondhand smoke and disregards that risk by failing to take reasonable measures to abate it.

52. I told medical staff that I am having problems breathing, headaches, and coughing due to secondhand smoke and the medical staff told me that there was not anything they could do about it. (See exhibit 17).

53. I requested a transfer to a nonsmoking prison (See exhibit 18).

54. I am taking medication for my blood pressure and cholesterol, however I did not have to take any medication for my blood pressure or cholesterol until after my arrival at CI Rivers.

55. The medical staff at CI Rivers gives away free handouts on the effect of smoking and the dangers it causes to your blood pressure and cholesterol levels (See exhibit 19).

56. I am at a higher risk for developing lung disease since it was revealed on a tuberculosis skin test that I had been infected with tubercle bacilli.

57. I take chest x-rays once a year and the exposure to ETS could weaken my defense mechanisms and activate the bacilli.

58. In Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed 2d 22(1993), the Supreme Court of the United States concluded that an inmate can state a cause of action under the Eighth Amendment for present injuries as well as future damage resulting from exposure to ETS. Helling, 509 U.S. at 33, 113 S.Ct. 2475

(declaring that "it would be odd to deny [relief] to inmates who plainly prove unsafe, life-threatening conditions in their prison on the ground that nothing yet had happened to them.")

59.  The defendants are negligence in the breach of a legal duty owed by them (Title 18 § 4042, Duties of Bureau of Prisons) that proximately causes injury to the Plaintiff, and Warden Synder has intentional inflicted emotional distress on the plaintiff with his extreme and outrageous attitude that nonsmokers do not have to remain in smoking areas which they are directed to cross everyday and the only areas prisoners can participate in outdoor activities.

## WHETHER THE DEFENDANTS VIOLATED TITLE 10 § 858, Art. 58 WHEN THEY CONFINED PLAINTIFF, A MILITARY PRISONER, TO A NON-FEDERAL CONTRACTED PRISON?

60.  Military prisoners do not meet the criteria of chapter 4 of the Security Designation and Custody Classification procedures for designation to a non-federal or contract prison.

61. P.S. 5100.07 states, "The Bureau will accept Military or Coast Guard inmate recommended for transfer to federal custody if, after examination of all available information, the Bureau can provide appropriate resources for the inmate's needs."

62. Paragraph K of BOP & Army Memorandum of Agreement states, "While in FBOP custody, military prisoners remain subject to all FBOP administrative and institution policy and procedures."

63.  BOP P.S. 5110.14, Administration of Sentence for Military and Coast Guard Inmates, "Military and Coast Guard inmates transferred to Bureau custody are subject to the same treatment and discipline as other Bureau inmates." (Title 10 U.S.C. § 858)

64.  I am not being treated the same as inmates in BOP, because

12

I am being denied a religious-based diet and exposed to second-
hand tobacco smoke.

65.   BOP facilities are nonsmoking facilities and I was receiving
kosher meals in the BOP.

## EXHAUSTION OF LEGAL REMEDIES

66.   Plaintiff Bobby Ray Curry, Jr. used the prisoner grievance
procedure available at CI Rivers. After plaintiff exhausted the
grievance procedure at CI Rivers, he used and exhausted the BOP
grievance procedures.

67.   April 18, 2006, I filed an informal grievance to Mr. Alexander,
B-unit counselor, stating that officials at CI Rivers were
violating several of my constitutional rights, applicable federal,
state and local laws, regulations, and BOP policies for exposing
me to environmental tobacco smoke (ETS), for denying me my religion-
based diet, using an illegal telephone system, denying me my
personal property, and since I am a military prisoner, I should
be treated as other federal prisoners (Title 10 U.S.C. § 858,
Art. 58), therefore I should be entitled to the same administra-
tive process as other federal prisoners (See Informal Resolution).

68. April 28, 2006, Mr. Alexander response was that the areas I
addressed don not justify a reason in which I should be transferred
to Petersburg or Butner (See Informal Resolution).

69.   April 28, 2006, I appealed the Informal Resolution by filing
a Step 1 to Assistant Warden Farmer (See Step 1 Administrative
Form).

70. May 17, 2006, Assistant Warden Farmer responded that I may
request a transfer through my case manager after I have been at

13

CI Rivers for 18 months disciplinary free (See Step 1).

71.  May 19, 2006, I appealed the Step 1 by filing a Step 2
to Warden Synder. I stated that neither Mr. Alexander or
Assistant Warden Farmer address the constitutional claims in
my complaint and ask Warden Synder to address these claims
(See Step 2).

72.  June 9, 2006, Warden Synder stated that there is no evidence
found to support any of my allegations (See Step 2).

73.  July 6, 2006, I appealed the Step 2 by filing a BP-230 to
the BOP regional office in reference to environmental tobacco
smoke (ETS), denial of religion-based diet, and illegal telephone
system (See BP-230, case # 420234-R1).

74.  July 25, 2006, The Regional Office rejected my appeal stating
that I have more than one issue/related issue and I must file a
separate appeal for each unrelated issue I want to address. I was
given 15 days of the day of rejection notice to re-submit my
appeal (BP-230, case # 420234-R1).

75.  July 27, 2006, I filed a separate appeal to the Region Office
in reference to denial of religion-based diet (BP-230, case #
422643-R1).

76.  July 27, 2006, I filed a separate appeal to the Region Office
in reference to illegal telephone claim (BP-230, case # 422642-R2).

77.  July 27, 2006, I filed a separate appeal to the Region Office
in reference to exposure to environmental tobacco smoke (ETS)
(BP-230, case # 420234-R2).

78. August 23, 2006, the Regional Office responded that the denial
of religious diet is not an appealable issue to the BOP (BP-230,

14

case # 422643-R1).

79. August 23, 2006, I appealed the Regional Office response to the Central Office by filing a BP-231 (BP-231, case #422643A1).

80. September 1, 2006, the Central Office concurred with the Regional Office's rejection that denial of religion-based diet is not an appealable issue to the BOP (BP-231, case # 422643-A1).

81. September 4, 2006, I filed an appeal to the Central Office in reference to the illegal telephone issue, because the Regional Office failed to respond in the require time period which is considered a denial (BP-231, dated Sept. 4, 2006).

82. September 6, 2006, I received Regional Office response to illegal telephone issue 2 days after I filed my appeal to the Central Office. The Regional Office stated that the illegal telephone issue is not appealable to the BOP(BP-230, case # 422642-R2).

83. October 16, 2006, The Central Office failed to respond to the illegal telephone issue in the required time period which is considered a denial.

84. August 23, 2006, the Regional Office response to the smoking issue was that my appeal is untimely (BP-230, case # 420234-R2).

85. August 23, 2006, I filed an appeal to the Central Office in reference to the smoking issue stating that my appeal to the Regional office was filed in time (BP-231, case # 420234-A1).

86. September 21, 2006, The Central Office response to the smoking issue is that I raised more than one issue/related issue (BP-231, case # 420234-A1).

87. September 21, 2006, I returned the appeal (BP-231, case # 420234-A1) to the Central Office with a letter stating that I

only raised one issue on appeal (See letter dated September 21, 2006).

88.   The Central Office reject my appeal in reference to smoking because they claim I did not attempt informal resolution when in fact I exhausted all administrative procedures before appealing to the Central Office.

## PREVIOUS LAWSUITS

A.   Parties to this previous lawsuit.

Plaintiffs: Bobby Ray Curry

Defendants: Federal Bureau of Prisons, Wackenhut Corrections Corporation, George M. Synder, John White, Julian Phillips, Carolyn Wolfe, Addie Holloman, and James Brown.

B.   Court: Eastern District of North Carolina Western Division

C.   Docket number: 5:05-CT-876-D

D.   Name of judge to whom case was assigned: James C. Dever III

E.   Disposition: Dismissed with Prejudice

F.   Approximate date of filing lawsuit: December 28, 2005

G.   Approximate date of disposition: May 10, 2006

AA.  Parties to this previous lawsuits.

Plaintiff: Bobby Ray Curry, Jr.

Defendants: The GEO Group, Inc., George C. Zoley, George M. Synder, James Brown, Conversant Technologies, Inc.

BB.  Court: County of Hertford Superior Court Division

CC.  Docket number: 06-CVS-528

DD.  Name of judge to whom case was assigned: Cy A. Grant

EE.  Disposition: Found to be without merit in fact and law

FF.  Approximate date of filing lawsuit: October 25, 2006

16

GG. Approximate date of disposition: <u>December 27, 2006</u>

## LEGAL CLAIMS

89.  Causation is established against the defendants since I would not be subject to CI Rivers policy and procedures but for the defendants' decision to send me to CI Rivers, and I have demonstrated redressibility under the "continuing respon-sibility" theory of my case.

90. Qualified immunity do not protect the defendants because: (1) my rights were violated, (2) The right that was violated was "clearly established" and (3) The defendants failed to do anything to fix the situation.

91.  The defendants have been "fully vested" with governmental authority to "fulfill essential aspects" of their duties, e.g. confinement and care of prisoners incarcerated by the government. The GEO Group, Inc. performs a public function delegated to them by the government, and the defendants and The GEO Group, Inc. assume the necessary obligations inherent in that function.

92.  Plaintiff reallege and incorporate by reference paragraphs 14 - 37.

93.  The denial of a kosher diet violated Plaintiff Bobby Ray Curry, Jr. rights and constituted a violation of free exercise of religion under the Religious Freedom Restoration Act (RFRA), as well as the First Amendment to the United States Constitutuion.

94.  The denial of a kosher diet because Plaintiff Bobby Ray Curry, Jr. does not practice the Jewish faith without individually evaluating the plaintiff with regard to the sincerity of his religious beliefs constitutes a violation of the Equal Protection

17

Clause of the Fourteenth Amendment to the Unites States
Constitution.

95.   The defendants violated the Religious Land Use and
Institutionalized Persons Act (RLUIPA) since they provide
money to The GEO Group, Inc. to operate CI Rivers.

96.   Plaintiff reallege and incorporate by reference paragraphs
39 -59.

97.   The exposure to environmental tobacco smoke (ETS) and the
deliberate indifference of the defendants violated Plaintiff Bobby
Ray Curry, Jr. rights and constitutes cruel and unusual punishment
under the Eighth Amendment to the United States Constitution.

98.   The defendants violated Title 10 § 858, Art. 58 when they
confined Plaintiff Bobby Ray Curry, Jr., a military prisoner, to
a non-federal contracted prison.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this court enter
judgment granting plaintiff:

99.   An INJUNCTIVE ordering the defendants to direct officials
at CI Rivers  to provide kosher meals to prisoner with bona
fide religious beliefs regardless of their faith.

100.  An INJUNCTIVE ordering the defendants to transfer plaintiff
to a federal facility within 500 miles of his legal residence.

101.  An INJUNCTIVE ordering the defendants to direct officials
at CI Rivers to remove cigarette lighters and designated smoking
area signs from all entrances/exits at least 50 feet.

102. NOMINAL  damages in the amount of $75,001.00 against each
defendant.

103.    PUNITIVE damages in the amount of $350,000.00 against each defendant for their callous indifference to plaintiff rights and to discourage others from acting illegally in the future.

104.    A jury trial on all issues triable jury.

105.    Plaintiff's costs in this suit to include attorney fees.

106.    Any additional relief this court deems just, proper, and equitable.

Dated: *16 January 2007*
        Respectfully submitted,

        *Bobby Ray Curry, Jr.*

        BOBBY RAY CURRY, JR.
        CI RIVERS
        P.O. BOX 630
        WINTON, N.C. 27986
        REGISTER NO. 11324-045


## VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under the penalty of perjury that the foregoing is true and correct.

Executed at Winton, N.C. on January 16, 2007.

*Bobby Ray Curry, Jr.*

BOBBY RAY CURRY, JR.

```
   RIVAR  535.03 *              INMATE PROFILE          *     05-19-2006
PAGE 001 OF 001                                              14:21:59
              11324-045           REG
REGNO: 11324-045              FUNCTION: PRT  DOB/AGE.: 02-28-1963 / 43
NAME.: CURRY, BOBBY R                        R/S/ETH.: B/M/O
RSP..: RIV-RIVERS CI                         MILEAGE.: 70 MILES
PHONE: 252-358-5200      FAX: 252-358-5202
 PROJ REL METHOD: PRESUM PAR                 FBI NO..: 412077JB0
 PROJ REL DATE..: 05-05-2007                 INS NO..:
 PAR ELIG DATE..: 06-14-2003                 SSN.....: 246172703
 PAR HEAR DATE..: N/A          PSYCH: NO     DETAINER: NO       CMC..: YES

OFFN/CHG RMKS: ATTEMPTED PREMEDITATED MURDER (1) 30 YRS.ASSAULT AND BATTERY
OFFN/CHG RMKS: (2) BURBLARY W/INTENT TO COMMIT MURDER(1). 76194/ARMY.
  FACL CATEGORY   - - - -    CURRENT ASSIGNMENT - - - - - - EFF DATE  TIME
  RIV  ADM-REL   A-DES     DESIGNATED, AT ASSIGNED FACIL 06-30-2005 1919
  RIV  CALLOUTS  ACAD COUNS ACADEMIC COUNSELOR           05-19-2006 0750
  RIV  CALLOUTS  AW-P      ASSISTANT WARDEN-PROGRAMS      05-19-2006 0800
  RIV  CARE LEVEL CARE1    HEALTHY OR SIMPLE CHRONIC CARE 01-11-2005 1345
  RIV  COR COUNSL B1       J. ALEXANDER, 3201             06-30-2005 1919
  RIV  CASE MGT  ARMY      ARMY MILITARY PRISONER         09-01-1998 1452
  RIV  CASE MGT  CFSA      CERT FOOD SINCERITY APPROVAL   11-14-2004 1117
  RIV  CASE MGT  MIL MOU 94 MILITARY MEMO/UNDERSTANDING 94 09-01-1998 1411
  RIV  CASE MGT  PROG RPT  NEXT PROGRESS REPORT DUE DATE  05-05-2007 0856
  RIV  CASE MGT  RPP NEEDS RELEASE PREP PGM NEEDS         01-06-2006 1227
  RIV  CASE MGT  V94 CVB913 V94 CURR VIOL BEFORE 91394    12-07-2001 0826
  RIV  CORR SVCS RAN NEG   RANDOM DRG TST-NEGATIVE        05-08-2004 0659
  RIV  CASEWORKER B1       I. OVERTON, 3206               06-30-2005 1919
  RIV  CUSTODY   IN        IN CUSTODY                     09-01-1998 0926
  RIV  DRUG PGMS DRG I NONE NO DRUG INTERVIEW REQUIRED    10-09-1998 1300
  RIV  EDUC INFO ESL HAS   ENGLISH PROFICIENT             10-23-1998 1608
  RIV  EDUC INFO GED HAS   COMPLETED GED OR HS DIPLOMA    01-19-1999 1342
  RIV  FIN RESP  NO OBLG   FINANC RESP-NO OBLIGATION      08-16-2005 1638
  RIV  LEVEL     LOW       SECURITY CLASSIFICATION LOW    03-31-2005 1331
  RIV  MED DY ST REG DUTY  NO MEDICAL RESTR--REGULAR DUTY 11-05-2005 1845
  RIV  MED DY ST SPEC DIET SPECIAL DIET - MEDICAL COND    01-12-2006 1345
  RIV  MED DY ST YES F/S   CLEARED FOR FOOD SERVICE       07-05-2005 0940
  RIV  PGM REVIEW JUN      JUNE PROGRAM REVIEW            06-07-2006 1054
  RIV  PSYCH TRMT CDE INCOMP CODE INCOMPLETE              02-22-2000 1504
  RIV  QUARTERS  B01-115U  HOUSE B/RANGE 01/BED 115U      07-01-2005 1448
  RIV  RELIGION  SANTERIA  SANTERIA                       11-08-2004 1858
  RIV  UNIT      B         K. JOHNSON, 3207               06-30-2005 1919
  RIV  WRK DETAIL EDUC TUTOR INMATE ACADEMIC TUTORS       08-02-2005 1119




G0000      TRANSACTION SUCCESSFULLY COMPLETED
```



07 0199

**FILED**

JAN 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BP-S148.055  **INMATE REQUEST** ☛ **STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Chaplain | DATE: 13 July 2005 |
|---|---|
| FROM: Bobby Curry | REGISTER NO. 11384-045 |
| WORK ASSIGNMENT: AEO | UNIT: B-1 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I was on a kosher diet at the last institution I was incarcerated, and since I can't get on a kosher diet here I would like to be placed on a vegetarian diet. Thank you.

Bobby Curry

(Do not write below this line)

DISPOSITION:

Please fill out & submit

Exhibit 1

| Signature Staff Member | Date 7 200? |
|---|---|

**Record Copy - File; Copy - Inmate**
**(This form may be replicated via WP)**          This form replaces BP-148.070 dated Oct 86
                                                   and BP-S148.070 APR 94

# RIVERS CORRECTIONAL INSTITUTION
## AUTHORIZATION FOR RELIGIOUS DIET PARTICIPATION

## VEGETARIAN DIET

Name of Inmate: _Bobby Curry_   Housing Unit _B-1-115 U_

Register Number _11334-045_   Religious Preference _Santera_

I voluntarily request authorization to participate in the Religious Diet Program (Vegetarian). I agree to comply with the program requirements. I understand that, if I am observed consuming mainline foods or violating other program requirements, I may be temporally removed from program participation and will not be eligible for immediate reinstatement. Repeated program violations may result in removal from the program for up to one year. I further understand that the same conditions for reinstatement may apply if I voluntarily withdraw form the programs for any reason.

I understand that I must have a recorded religious preference, and I must be actively attending/participating in the religious services of my chosen faith , and that I must provide a written reason for requesting to participate in the religious diet program.

Are you presently participating in RCI's religious services of your chosen faith? _I practice my faith on my own_

If not please state your reason(s) _There is no Santeria religious program here_

Specific Motivation for participating in the Religious Diet Program:

Signature of Inmate _Bobby Curry_   Date _8 August 2005_

### Do Not Write Below this Line

You were interviewed for participation in the Religious Diet Program. Upon review of the responses given in the interview questionnaire, it was determined that you are:

Approved/Not Approved to participate in the mainline component of Religious Diet Program.

Signature of Chaplain _____   Date _8-11-05_

*Please check w/ medical per your medical diet.

Record Copy - Inmate Central File; Copy - Chaplaincy File; Copy - Inmate

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98

U.S. DEPARTMENT OF JUSTICE                          FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Ms Wolfe / Food Service Manager | DATE: 16 September 2005 |
|---|---|
| FROM: Bobby Curry | REGISTER NO.: 11334-045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-1-115U |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Ms. Wolfe, when I worked in the kitchen, I noticed that some of the meat we were served was 'End and Portions'. I would like to know the nutritional value of these particular meats. Thank you for your time and attention in this matter.

*(Do not write below this line)*

DISPOSITION: End and Portions are items that come in that have been sliced but have the end pieces still left in pkgs. You still get 4oz meat sliced and that meets RDA requirements.

| Signature Staff Member | Date 9/19/05 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Exhibit 2

# TURKEY HAM

with turkey thigh meat...20% water added
ENDS & PIECES

Ingredients: Turkey Thigh Meat, Water, Salt, Dextrose, Sodium Lactate, Sodium Phosphate, Sodium Diacetate, Sodium Erythorbate. Sodium Nitrite.

2/20 LB. PKGS. NET WT. 40 LBS. (18.16 Kg)

# HRI    491083

Packed By
Plumrose USA Inc.
General Office
East Brunswick, N.J
0891

KEEP REFRIGERATED or FROZEN

BP-S148.052 INMATE REQUEST TO STAFF CDFRM

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISON

| TO:(Name and Title of Staff Member | DATE: |
|---|---|
| Chaplain Brown | 18 September 2005 |
| FROM: Bobby Curry | REGISTER NO: 11324 - 045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-1-115U |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

On 11 August 2005, you forward my 'Authorization for Religious Diet Participation' form back to me through the mail disapproved. Since I have been here, I have been disapproved for both the kosher and vegetarian diets, yet I wasn't interviewed for neither. I would like for you to explain to me the reason I was denied Participation.

Thank you for your time and attention in this matter.

*(signature)*

(Do not write below this line)

DISPOSITION:

Placed on Call out

Exhibit **3**

| Signature Staff Member | Date |
|---|---|
| *(signature)* | 9 - 20 - 05 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**U.S. DEPARTMENT OF JUSTICE**

**INMATE REQUEST TO STAFF** CDFRM

FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) Medical | DATE: 22 September 2005 |
|---|---|
| FROM: Bobby Curry | REGISTER NO.: 11324-045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-1-115U |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I was informed by the Chaplain today that I was on a medical diet and that I have been on a medical diet since 5 July 2005. I have not seen anyone at medical regarding a medical diet and in fact I am a vegetarian. I want to be place on a vegetarian diet. I went to the kitchen at dinner and I was informed that I wasn't on a medical diet. I would like for you to confirm for me whether or not I am on a medical diet. Thank you for your time and attention in this matter.

Received & Reviewed: 9/23/05

(Do not write below this line)

DISPOSITION:

You are on a medical diet. It started 6-29-05. It expires 12-29-05. It is a diet for health because you are in high blood pressure clinic.

| Signature Staff Member R. Robertson RD | Date 9-26-05 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Exhibit 4

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRIS(

| TO: (Name and Title of Staff Member) Chaplain | DATE: 2 May 2006 |
|---|---|
| FROM: Bobby Curry | REGISTER NO.: 11324-045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-1-1154 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action bei
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

When I arrived here, you told me that only
those who practice the Jewish faith are allow to receive
kosher meals at Rivers, even though I was on a kosher
diet in the Federal Bureau of Prisons due to my religious
beliefs. I would like for you to provide me a copy of
this policy.
Thank you for your time and attention in this
matter.

Bobby Curry

**(Do not write below this line)**

SPOSITION:

Please read religious services policy of RCZ - See library

Exhibit 5

| Signature Staff Member | Date 5-4-06 |
|---|---|

BP-A148.070
SEP 98

**INMATE REQUEST TO STAFF MEMBER**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) | DATE: |
|---|---|
| Chaplain | 9 May 2006 |
| FROM: | REGISTER NO. : |
| Bobby Curry | 11324-045 |
| WORK ASSIGNMENT: | UNIT: |
| Education Tutor | B-1-115L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.
Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully
respond to your request.)

I asked you in a prior Request To STAFF MEMBER, where does it states that only those who practice the Jewish faith are allowed to receive kosher meals and you directed me to check religious services policy in the library. I checked RCT #23.001 which covers reglious services and I did not see in it anywhere that only those who practice the Jewish faith are allowed kosher meals. Since you told me that only those who practice the Jewish faith are allowed kosher meals, please provide me a copy of this policy. Thank you!

Bobby Curry

(Do not write below this line)

DISPOSITION:

Please see the attached

Exhibit **6**

| Signature Staff Member | Date: |
|---|---|
| | 5-15-06 |

Record Copy - File; Copy - Inmate

Replaces BP-148 of OCT 86

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISON

| TO:(Name and Title of Staff Member | DATE: |
|---|---|
| Chaplain Brown | 19 May 2006 |
| FROM: Bobby Curry | REGISTER NO.: 11324-045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-1-115 u |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

When I arrived here, you told me that only those who
practice the Jewish faith are allow to receive kosher meals at
Rivers, even though I was on a kosher diet in the Federal Bureau
of Prisons due to my religious beliefs.
In a response to my Inmate Request to Staff dated
2 May 2006, you told me to read religious policy of RCI which
I did. I forward a Request on 9 May 2006 indicating that I
could not find in the policy where it stated only the Jewish faith
are allowed kosher diet and asked that you forward me a copy of the
policy. You forward me a copy of the policy with a portion highlighted
To ensure that I understand you correctly, you are saying that as
chaplain and the approving authority for religious meals, you only
authorized those of the Jewish faith to receive kosher meals. Thank you.

(Do not write below this line)

DISPOSITION:

As Chaplain, I am required to abide by the policy of RCI

| Signature Staff Member | Date |
|---|---|
| | 5/29/06 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

Exhibit 7

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Food Service / Ms Wolfe | DATE: 23 July 2006 |
|---|---|
| FROM: Bobby Curry | REGISTER NO.: 11324-045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-2-1094 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

I would like to know the reason that those inmates who are on Diet for Health (DFH) diets are receiving the same food as regular diet except for canned or fresh fruit instead of cake. Yesterday I received the exact same meals as regular diet except for canned fruit in the place of cake.

Thank you for your time and attention in this matter.

*Bobby Curry*

(Do not write below this line)

DISPOSITION: There are days on the menu that you do receive the same except dessert.

*Exhibit 8*

| Signature Staff Member | Date 7/24/06 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

**ACLU** FOUNDATION

AMERICAN CIVIL LIBERTIES UNION
of NORTH CAROLINA

P.O. Box 28004 • Raleigh, North Carolina 27611-8004

(919) 834-3390 (voice & TDD) • Fax (919) 828-3265

December 11, 2006

<u>VIA CERTIFIED MAIL</u>
Warden George Snyder
Rivers Correctional Institution
145 Parker's Fishery Road
Winton, North Carolina  27986

Re:  Denial of Religious Meals for Inmate, Bobby Curry # 11324-045

Dear Warden Snyder,

The American Civil Liberties Union of North Carolina Legal Foundation (ACLU-NCLF) has received a complaint from Bobby Curry, a current inmate at Rivers Correctional Institution ("Rivers C.I."). Mr. Curry complains that he has been denied a kosher diet, as requested by Mr. Curry based upon sincerely held religious beliefs. Specifically, Mr. Curry practices the religion of Santeria and desires a kosher diet as part of his practice of that religion. By this letter, the ACLU-NCLF seeks to provide guidance on the obligations of Rivers C.I. under federal law and requests that Rivers C.I. provide Mr. Curry with his requested diet.

The Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb <u>et seq.</u>, which applies to the claims of federal prisoners, (see <u>O'Bryan v. Bureau of Prisons</u>, 349 F.3d 399, 401 (7th Cir. 2003)), provides that:

> Government shall not substantially burden a person's exercise of religion . . . [unless] it demonstrates that application of the burden to the person -
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.S. § 2000bb(a) & (b). By its denial of Mr. Curry's request for a kosher diet, Rivers C.I. appears to be in violation of RFRA, as well as the First Amendment.

RFRA protects the constitutional right of individuals to the free exercise of religion under the First Amendment to the United States Constitution. A government entity violates an individual's rights under the First Amendment and RFRA when the entity substantially burdens a prisoners' sincerely held religious beliefs without employing a practice that is the least restrictive means of furthering a compelling government interest. <u>Gartrell v. Ashcroft</u>, 191 F. Supp.2d 23, 37 (D.D.C. 2003). Failure to accommodate dietary restrictions based upon sincerely held religious beliefs has been found to violate both: (1) RFRA (see <u>Tyson v. Ratelle</u>, 166 F.R.D. 442, 449-50 (C.D. Cal. 1996) (holding genuine issue of material fact existed to deny summary judgment on inmate's RFRA claim regarding to whether inmate was denied religious diet during Ramadan); and (2) the First Amendment (<u>Beerheide v. Suthers</u>, 286 F.3d 1179, 1192 (10th Cir. 2002) (requiring co-pay from



*Exhibit 9*

prisoners requesting Kosher meals violates First Amendment); <u>Ashelman v. Wawrzaszek</u>, 111 F.3d 674, 678 (9th Cir. 1997) (failure to provide Kosher meals violates First Amendment)).

Additionally, under First Amendment analysis, "it matters not whether the inmate's religious belief is shared by ten or tens of millions. All that matters is whether the inmate is sincere in his or her own views." <u>Williams v. Bitner</u>, 359 F. Supp.2d 370, 376 (M.D. Pa. 2005). <u>See also</u> <u>Morrison v. Garraghty</u>, 239 F.3d 648, 659 (4th Cir. 2001) (holding that "[d]iffering beliefs and practices are not uncommon among followers of a particular creed, and it is not within the judicial function and judicial competence to inquire whether the petitioner or another practitioner more correctly perceives the commands of their common faith" (internal alterations, citations and quotations omitted)). Consequently, since Mr. Curry's sincerely held religious beliefs include the consumption of a kosher diet, his beliefs are protected under the First Amendment and RFRA.

Under RFRA, the only justification for a burden on the free exercise of religion is that it would further a compelling government interest, provided that it is the least restrictive means of furthering that interest. 42 U.S.C.S. § 2000bb(a) & (b). Unless Rivers C.I. can meet this burden, Mr. Curry should be provided with a kosher diet. As Rivers C.I. should already be providing kosher diets to its Jewish inmates, it is difficult to imagine what compelling interest the prison could assert for its denial of Mr. Curry's request.

Further, to the extent that Rivers C.I. failed to individually evaluate Mr. Curry with regard to the sincerity of his religious beliefs and instead denied his request for kosher meals simply because he does not practice the Jewish faith, Rivers C.I. may also be in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. <u>See</u> <u>Morrison</u>, 239 F.3d at 658 (holding that plaintiff was denied equal protection because defendants "never evaluated the sincerity of [plaintiff's] beliefs" as they would have for other inmates' requests for religious items).

Given the above obligations of Rivers Correctional Institution under Religious Freedom Restoration Act, the First Amendment and the Fourteenth Amendment, we ask that you investigate this matter fully and inform the ACLU-NCLF of your proposed course of action by **December 27, 2006**. Please include documentary evidence of any individual evaluation done by your staff to determine the sincerity of Mr. Curry's religious beliefs. Thank you in advance for your attention to this matter. If you have any questions or comments, please contact me at the above address or by telephone at (919) 834-3466.

Sincerely,

Katherine Lewis Parker
Legal Program Coordinator[1]

cc:    Mr. Bobby Curry, # 11324-045

---

[1]Bar Disclosure: I am a member in good standing of both the Florida and Georgia Bars and have applied to take the North Carolina Bar exam in February 2007. Under the North Carolina Rules of Professional Conduct, I am permitted to provide services in cases that are limited to federal law. N.C. Rules of Professional Conduct Rule 5.5(c)(2)(E). Please contact me if you have any questions.

2

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98

U.S. DEPARTMENT OF JUSTICE                           FEDERAL BUREAU OF PRISONS

| TO:(Name and Title of Staff Member) <br> Chaplain Brown | DATE: <br> 18 December 2006 |
|---|---|
| FROM: <br> Bobby Curry | REGISTER NO.: <br> 11324-045 |
| WORK ASSIGNMENT: <br> Tutor Education | UNIT: <br> B-2-206L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

    In July 2005, you told me only those inmates of the Jewish faith are allow
kosher diets at Rivers, even though I told you that I received kosher meals in
the FBOP due to my religious beliefs. You never asked me my religious beliefs,
and now at the interview we had today, you said that the FBOP does not provide
an itinerary for the Santeria faith and I should not have been given a kosher
diet. All of the Orishas of Santeria are associated with the natural forces
of the earth, therefore a diet with fresh fruits and vegetables from the earth
is a part of the Santeria diet. Meat can be eaten if it does not contain the
blood which is considered the life source. Even sacrifices have to be drain of
its blood or life source before offering it to the creator Oloddumare. The
kosher diet meets the requirement of my faith and I would like for you to con-
firm what was discussed at the interview. Thank you.

                                                                Bobby Curry

                        (Do not write below this line)

DISPOSITION:

As you have done in our past interviews, you continue to misquote what I
have said to you. May I ask you again to provide information to
substantiate your claims. Again, I can offer you a vegetarian
diet if you desire. Please fill out & submit the attached

                                                            Exhibit 10

| Signature Staff Member | Date <br> 12/19/06 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94


Printed on Recycled Paper

Rivers Layout



The appellant lives in B Unit and the arrows indicate the route he must take to go to the dining hall. The appellant could go through the main yard to get to the dining hall, but that would not be wise for a nonsmoker. The sidewalks is approximately 10 feet wide. Prisoners have to go through the gym to get to the rear yard, and it depends on the recreation officer whether to open the rear yard. The rear yard is opened on certain days at different times.

Legend

E – WAREHOUSE
F – commissary
G – Dining Hall 3
H – Dining Hall 4
I – Laundry / Records office
J – Warden's Area
K – medical
L – Barber shop
M – Gym
N – Shift Supervisor office
2 – Chapel
Q – Library / (Education)

0 – cigarette lighters
xxxx – fence
⌐ – door / gate
-- – sliding gate

Exhibit 12



In this photo, you see the cigarette lighter and designated smoking area sign posted near the entrance/exit to the main yard. The door you see through the entrance/exit to the yard is the door to the plaintiff's housing unit.

Exhibit 13

BP-S288.052   INCIDENT REPORT  COFRM
MAY 1994
U.S. DEPARTMENT OF JUSTICE                                          FEDERAL BUREAU OF PRISONS

| 1. NAME OF INSTITUTION: *Rivers* | | | | |
|---|---|---|---|---|
| PART I  -  INCIDENT REPORT | | | | |

| 2. NAME OF INMATE *Emmanuel Lewis* | 3. REGISTER NUMBER *51621-083* | 4. DATE OF INCIDENT *9-20-05* | 5. TIME *0745* |
|---|---|---|---|

| 6. PLACE OF INCIDENT *Hub Pod D* | 7. ASSIGNMENT *Iron Crew* | 8. UNIT *Bravo* |
|---|---|---|

| 9. INCIDENT *Smoking Where Prohibited* | 10. CODE *332* |
|---|---|

11. DESCRIPTION OF INCIDENT (Date: *9/20/05* Time: *0745*  Staff became aware of incident)

*I C/O R. Holley was making security checks in pod 4. I passed by cell #110L Inmate Emmanuel Lewis 51621-083 was standing toward window looking into a mirror smoking a cigarett. I C/O Holley stopped open door, And ask Inmate Emmanuel Lewis for his I.D.*

| 12. SIGNATURE OF REPORTING EMPLOYEE *R. Holley* | DATE AND TIME *9-20-05  0745* | 13. NAME AND TITLE (Printed) *R. Holley  C/O* |
|---|---|---|

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY *Sgt. J. Well* | 15. DATE INCIDENT REPORT DELIVERED *0835 9-20-05* | 16. TIME INCIDENT REPORT DELIVERED *0835* |
|---|---|---|

PART II - COMMITTEE ACTION

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT

*I/m stated that C/o B. Holley opened the door + said given me your ID. He further states that she probably smelled smoke.*

| 18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU: ✓ COMMITTED THE FOLLOWING PROHIBITED ACT.  *332* | B. ___ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING |
|---|---|
| ___ DID NOT COMMIT A PROHIBITED ACT. | C. ✓ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDAR DAYS. |

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

*I/M was smoking in his cell.*

20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)

*UDC sanctions 15 days lp of comm.*

21. DATE AND TIME OF ACTION *9/22/05 @ 0955*   (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

| *D. Sutton  D. Sutton* | *J. Alxxx* | |
|---|---|---|
| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |

Record Copy - Central File Record;  Copy - DHO;  Copy - Inmate after UDC Action;  Copy - Inmate within 24 hours of Part I preparation

*Exhibit 14*

BP-S288.052 INCIDENT REPORT CDFRM
MAY 1994
U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

NAME OF INSTITUTION: _____

PART I - INCIDENT REPORT

| 2. NAME OF INMATE | 3. REGISTER NUMBER | 4. DATE OF INCIDENT | 5. TIME |
|---|---|---|---|
| Munroe Calvin | 05707-016 | 3/20/06 | 10:00 |

| 6. PLACE OF INCIDENT | 7. ASSIGNMENT | 8. UNIT |
|---|---|---|
| HUB pod-1 cell 108 | P/M orl | |

| 9. INCIDENT | | 10. CODE |
|---|---|---|
| Destroying a dirt over toward staff _____ | | 307 |

11. DESCRIPTION OF INCIDENT (Date: _____ Time: _____ Staff became aware of incident)

_____

| 12. SIGNATURE OF REPORTING EMPLOYEE | DATE AND TIME 3/20/06 12:45 | 13. NAME AND TITLE (Printed) |
|---|---|---|

| 14. INCIDENT REPORT DELIVERED TO ABOVE INMATE BY | 15. DATE INCIDENT REPORT DELIVERED | 16. TIME INCIDENT REPORT DELIVERED |
|---|---|---|

PART II - COMMITTEE ACTION

17. COMMENTS OF INMATE TO COMMITTEE REGARDING ABOVE INCIDENT

18. A. IT IS THE FINDING OF THE COMMITTEE THAT YOU:
COMMITTED THE FOLLOWING PROHIBITED ACT.

DID NOT COMMIT A PROHIBITED ACT.

B. _____ THE COMMITTEE IS REFERRING THE CHARGE(S) TO THE DHO FOR FURTHER HEARING
C. _____ THE COMMITTEE ADVISED THE INMATE OF ITS FINDINGS AND OF THE RIGHT TO FILE AN APPEAL WITHIN 15 CALENDAR DAYS.

19. COMMITTEE DECISION IS BASED ON THE FOLLOWING INFORMATION

20. COMMITTEE ACTION AND/OR RECOMMENDATION IF REFERRED TO DHO (CONTINGENT UPON DHO FINDING INMATE COMMITTED PROHIBITED ACT)

21. DATE AND TIME OF ACTION _____ (THE UDC CHAIRMAN'S SIGNATURE NEXT TO HIS NAME CERTIFIES WHO SAT ON THE UDC AND THAT THE COMPLETED REPORT ACCURATELY REFLECTS THE UDC PROCEEDINGS.)

| Chairman (Typed Name/Signature) | Member (Typed Name) | Member (Typed Name) |
|---|---|---|

Record Copy - Central File Record; Copy - DHO; Copy - Inmate after UDC Action; Copy - Inmate within 24 hours of Part I preparation

Exhibit 15

Rivers Correctional Institution

Date:        June 21, 2005

To:          Thomas, Oliver
             Reg# 40930-004

This is in response to your Inmate Requests to Staff dated May 30, 2005 and June 7, 2005 in which you state that you are a non-smoker being subjected to second hand smoke.

This is not a smoke free environment. The main yard is a designated smoking area for the inmate population. The recreation yard is a very large open space and once you are on the yard it is your decision to remain in the designated smoking areas or not to remain in the designated smoking areas.

I trust this information addresses your concerns.

_6 - 21. 05_
Date

George Snyder
Warden

Exhibit 16

Rec. 06/28/05

Received 6.21.05 P.M.

# GEO

## The GEO Group, Inc.

RIVERS CORREC
INSTITUTIO

## MEDICAL REQUEST/SOLICITUD DE ASISTENCIA MEDICA

**Date of Request/** _20 June 2006_
**Fecha de Solicitud**

(Please check one)/ ✓   **Medical Complaint/**    Dental C
(Por favor marque uno)   **Queja medica**    Queja De

**Print/:** _Bobby Curry_
**Letra-Molde**   Inmates Name/    _11324-045_    _B-1-115Cl_    _Education Tutor_   Gm 9.
      Nombre del Preso    **Number/**    **Housing Location/**   **Job Assignment/**   Di
         **Numero**    **Sitio de Vivienda**   **Asignacion de Trabajo**   Ho

Briefly state the reason for your request; you will receive a response to your request. Please allow sev
your request to be submitted, answered, and returned. A copy of your request will be filed in your record:

Explique brevemente la razon de su solicitud. Permita varios dias para que su solicitud sea procesada. U
su solicitud sera archivada en sus records. Prisioneros de habla hispana pueden solicitar dicha assistencia e

**PROBLEM/QUEJA:** _The heavy smoking of inmates on the main yard, especially_
_those that stand at the entrances/exits to the main yard are causing me to_
_have severe headaches, breathing difficulty, and nausea. The exposure to_
_environmental tobacco smoke (ETS) is the reason I am on medication for my blood pressure_
_and cholesterol. I wasn't on any medication prior to my arrival at Rivers and the pamphlet_
_(Smoking and Your Heart) states that smoking causes blood pressure to_
**Inmate/s Signature/Firma del Preso** _go up, cbc (bad) cholesterol to go up, HDL(good) cholesterol to go_
_down. This pamphlet is provided to inmates from Rivers medical staff._

=======DO NOT WRITE BELOW THIS LINE/NO ESCRIBA DEBAJO DE ESTA LINEA ===

**Date Received:** _____
                 **(Stamp Date)**

**Date Reviewed:** _____    ____ **Written Response (see below)**     ____ Seen in Medical
**ACTION TAKEN:** _____

_____

_____

_____

____ **Placed on sick call list**    Date of Appointment: _____

____ **Placed on Dental list**    Date of Appointment: _____

____ **Other (Explain):** _____

**Medical Staff Signature** _____     **Date** _____

_Exhibit 17_

# Rivers Correctional Institution

Date:        August 4, 2006

To:          Bobby Curry
             Reg. No. 11324-045

This is in response to your Inmate Request to Staff dated July 27, 2006, in regards to your request to be transferred to a smoke-free facility due to medical reasons.

According to your medical record, there is no indication for a request for a medical transfer at this time.  Should you continue to have headaches and problems breathing, please submit a request to the medical department for an evaluation.  We will continue to monitor your condition.

_8 - 4 - 06_
Date

_George Snyder_
Warden

**ORIGINAL**

Exhibit 18

## GEO/RCI ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)

To: Mr. Alexander (B-Unit)
(Counselor)

1.    Write in this space, briefly, your complaint.  Include all details and facts which support your request.

My complaint is that the warden and staff at Rivers are violating several of my Constitutional rights, applicable Federal, state and local laws, regulations, and Federal Bureau of Prisons policies.

See attachments for a more detailed account of what I perceive as violations (5 pages).

2.    What action do you wish to be taken to correct the situation?

Immediate transfer to either Petersburg or Butner which are federal prisons and monetary compensation.

Bobby Curry / _Bobby Curry_      11324-045      B-1-115U      16 April 2006
Inmate Name/Signature              Reg. No.          Unit/Bed       Date

3.    State Clearly staff efforts to resolve the matter informally.  Be specific, but brief and provide to inmate.

See Attached!

*********************************************************************************
The Informal Resolution Was/Was Not (circle one) accomplished for the above noted reason.

_Bobby Curry_      28 April 2006      _John_          4/28/06
Inmate Signature       Date          Counselor Signature       Date

Revised 01/21/04
poh

On 24 October 2005, I forwarded the warden an Inmate Request To Staff stating that as a military prisoner I should be housed at a Federal Bureau of Prisons (herein after FBOP) facility and that I am being denied several rights and benefits afforded FBOP prisoners by being here. His response was that I was designated to this facility by the FBOP and any questions regarding my designation should be addressed to them.

On 5 November 2005, I forwarded another Inmate Request To Staff to the warden's office stating that although he addressed the first part of the Inmate Request To Staff dated 24 October 2005, he did not address the second part where I stated several of my rights are being violated, and that I am being denied those benefits afforded FBOP prisoners. His response was that I did not elaborate on the issue and I should take any questions I perceive as violations of rights or denial of benefits due to my designation at this facility to the Bureau of Prisons also.

I completed the administrative process at the FBOP level, and I brought to their attention what I perceived as violations of the U.S. Constitution, FBOP policies, applicable Federal, state and local laws and regulations, however the FBOP only addressed the designation issue and failed to address the several violations at Rivers. I would like for the warden to address each violation of my rights.

**Smoking:** I have never smoked in my life and nevertheless I am being exposed to poisonous toxins of second-hand smoke at this facility due to how officials at Rivers regulate the flow of traffic between the dining hall and housing units, and due to the location of the smoking area. The smoking area is the main and back yards, yet I am directed by staff to cross the main yard everytime I leave the dining hall except on rainy days. In addition, both staff and inmates smoke on the sidewalks surrounding the main yard, and inmates sneak and smoke in the housing unit. I am unable to participate in recreational activities outside without being exposed to second-hand smoke. There are hundreds of inmates smoking on the main yard everyday.

FBOP Program Statement 1640.04 states, "Medical and public health authorities have established the hazards of tobacco smoke. Of particular concern are the risks posed to nonsmokers by passive inhalation of environmental tobacco smoke (ETS). The Surgeon General has long concluded that scientific research indicated

1

that second-hand smoke is the cause of lung disease in otherwise healthy nonsmokers."

In addition, I am at a higher risk for developing a lung disease since it was revealed on a tuberculosis skin test that I had been infected with tubercle bacilli. I have been getting chest x-rays once a year for several years now and the exposure to ETS could weaken my body's defense mechanisms and activate the bacilli.

**Denial of Personal Property:** When I arrived at Rivers on 29 June 2005 from McKean Federal Correctional Institution, I came with two (2) pairs of tennis shoes in my property. When transferring between federal prisons, the receiving institution will allow you to keep all your property purchased at another institution as long as you do not exceed the authorized amount. Mr. John White, Inmate System Manager, denied me personal property I purchased at another federal facility, a pair of shorts and two (2) pairs of white/grey tennis shoes stating that Rivers policy only allows all white or all black tennis shoes into the facility, however at the time the commissary was selling white/grey tennis shoes through their authorized catalog. Also you can find many different colors of tennis shoes worn by inmates at this facility. Rivers has a contract with the FBOP and shoes purchased at a federal institution should be allow at Rivers.

**Administrative Remedy:** I am being denied the same administrative remedies afforded those prisoners in the FBOP. Rivers have two (2) separate, distinct procedures within the Administrative Remedy Process. One process is designed to respond to complaints concerning the Rivers Correctional Institution policies, procedures, practices, and employees, however this process does not go outside the institution. The other is an established Bureau of Prisons process utilizing the FBOP forms and procedures. This procedure is to be utilized to seek remedy concerning FBOP related issues (e.g. sentence computation, designation, and transfer issues, and prior custody) and is governed by FBOP Administrative Remedy Program Statement 1330.13, and Rivers policy 12.006. I am being denied due process because I am unable to have other issues related to my incarceration formally reviewed by high level Bureau officials regarding Rivers policies, procedures, practices, and employees as other Bureau inmates housed in federal facilities.

**Illegal telephone system:** I am being discriminated against due to the prices Rivers allows Conversant Technologies in Plano, Texas to charge for telephone calls. Rivers is passing on inflated telephone prices to the prisoners and is

operating an illegal telephone system. The FBOP charges .23¢ per minute
per call and they use the ITS-II system. Every prisoner is provided a
Phone Access Code (PAC) which is delivered through regular institution
mail in a seal envelope to ensure the PAC numbers confidentiality. Staff
advises prisoners not to give their PAC to another prisoner and to report
a compromised PAC immediately (See FBOP Program Statement 5264.07).

At Rivers, the prisoners use their prison numbers to access the phone
system. This number is always compromised and especially by Rivers
officials who post call-outs for appointments everyday with the prisoner's
name, prison number, unit dormitory, and bunk assignment on the dormitory
and unit bulletin boards. Also, prison numbers are printed on the prisoner's
identification card which leaves the prisoner's possession several times a
day to sign out library items, to pick up commissary, and to receive special
diet and at each point the identification card is handle by other prisoners.

Conversant Technologies charges .95¢ for local calls, between $1.65 -
$2.25 per call charge plus mileage fee for intrastate long distance calls,
$2.75 per call charge plus .40¢ per minute for interstate calls, and a bill
processing fee of $1.40 every month regardless of the number of calls. A
fifteen (15) minute interstate phone call through Conversant Technologies
cost $8.75 plus $1.40 billing fee compared to $3.45 for the same call in the
FBOP.

**Denial of Religious Diet:** I am on the SENTRY religious diet participant
list in the FBOP due to my religious beliefs, however I was denied participation
at Rivers because Chaplain Brown told me that only those who practice the Jewish
faith are allowed kosher meals at Rivers. The chaplain disapproved my request
for a vegetarian diet as well without calling me in for an interview for either
diet in accordance with FBOP Program Statement 5360.08 and Rivers policy 23.001.
I was forwarded an "Authorization for Religious Participation" form through
institution mail which I filled out, signed, and forwarded back to the chaplain.
It came back to me through the mail disapproved.

On 18 September 2005, I forwarded an Inmate Request To Staff to the chaplain
stating that I have been disapproved for both the kosher and vegetarian diets,
yet I was not interviewed for neither. He placed me on call-out and explained
to me that I was on medical diet which was unknown to me, and stated that only
those of the Jewish faith are allowed kosher diets at Rivers and at the time
there was only two people receiving kosher meals.

3

I went to dinner later that day and asked whether or not I was on a medical diet and was told no. I forwarded an Inmate Request To Staff to medical and they told me that I have been on a medical diet since 29 June 2005. After the medical response, I asked staff in the kitchen again whether or not I was on a medical diet and to my surprise I was told yes. Regular and medical diets are the same other than medical diets receive canned fruits or on rare occasions a fresh fruit instead of cake, no salt packets are placed on medical trays, and sometimes medical trays will get wheat or white slices of bread instead of biscuits or buns. Most of the meats are End and Pieces for both diets and this meat is of very low quality. Any diet other than kosher diet is a violation of my religious beliefs with the exception of a vegetarian diet.

As a military prisoner, I am to be treated the same as other Bureau inmates: Federal Bureau of Prisons Program Statement 5110.4 states, "Military and Coast Guard inmates transferred to Bureau custody are subject to the same treatment and discipline as other Bureau inmates." In addition, The FBOP Central Office response to my administrative remedy was that the issue I raised is address in Title 10, United States Code, Section 953, Specifically, Article 58. Execution of Confinement states that "Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal,... may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use." However, the Central Office response only addressed the designation issue. They did not address the violations of my rights or the fact that I am not being treated as other Bureau inmates. If the Central Office would have included the next line of Title 10, United States Code, Section 858, Specially, Article 58, you find that it states, "Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the Courts of the United States or of the State, Territory, District

4

of Columbia, or place in which the institution is situated."

Both the Regional and Central Offices mentioned that the designation
and classification of inmates is administered in accordance with FBOP
Program Statement 5100.07, Security Designation and Custody Classification.
The Regional office went a step further and said that the Program Statement
addresses designation of military prisoners as follows: "Designation to a
Non-Federal or Contract Facility. Designations to non-federal or contract
facilities will be in accordance with the procedures contained in Chapter
4, Designations to Non-Federal Facilities."

I am not from the District of Columbia, nor was my crime committed
in the District of Columbia. I do not meet any of the requirements in
Chapter 4, of Program Statement 5100.07, Security Designation and Custody
Classifications. In addition, Chapter 10, page 9, section D, Military Inmates,
states, "The Bureau will accept a Military or Coast Guard inmate recommended
for transfer to federal custody if, after examination of all available in-
formation, the Bureau can provide appropriate resources for the inmate needs."

My needs are not being met at Rivers because, I am a military inmate
who is not being treated the same as other Bureau inmates due to officials at
Rivers failure to follow policies established by the Federal Bureau of Prisons,
the U.S. Constitution, applicable Federal, state and local laws and regulations.
In a federal prison, I am not exposed to second-hand smoke because federal
institutions are nonsmoking facilities, I am allowed to keep property purchased
in federal facilities,  I can have any issue related to my incarceration
formally review by high level Bureau officials, I will have access to the cheaper
ITS-II telephone system, I would be receiving kosher meals, and I would be
employed in Unicor where I have five (5) years longevity.

Whereas, I respectfully request for an immediate transfer to either Butner
or Petersburg which are federal facilities, monetary compensation, and for Rivers
to abide by the U.S. Constitution, all applicable Federal, state and local laws,
Federal Bureau of Prisons policies, and regulations in accordance with the
contract.

Date: _18 April 2006_

Bobby Curry 11324-045
Rivers Correctional Institution
P.O. Box 530
Winton, N.C. 27986

5

Rivers Correctional Institution

Date:        April 26, 2006

To:          Curry, Bobby
             Reg # 11324-045

This is in response to your informal resolution dated 04-18-2006 in which you
stated that the warden and staff at Rivers are violating several of your
constitutional rights such as smoking on the compound, denial of personal
property, administrative remedy, illegal telephone system and the denial of
religious diet.

All the areas you addressed do not justify a reason in which you should be
transferred to Petersburg or Butner. You have spoken with your case manager
prior in regards to a transfer for educational reasons. She is trying to assist you
in this matter. Any other issues concerning transfer should be addressed to your
case manager.


_____                    _____
Date                                        J. Alexander, Unit B Counselor



**GLOBAL EXPERTISE IN OUTSOURCING**

**Correctional Programs**
**Administrative Remedies**

# Rivers Correctional Institution
## Step 1 Administrative Remedy Form
### Paso 1 Forma De Remedio Administrativo

| Name: Bobby Curry<br>Nombre: | Number: 11324-045<br>Numero: |
|---|---|
| Date: 28 April 2006<br>Fecha: | Housing Assignment: B-1-115U<br>Unidad Asignada: |

| For Official Use Only - Para Uso Oficial Solamente | | | |
|---|---|---|---|
| Date Rec'd:<br>5/4/06 | Complaint #:<br>06-092 | Staff Assigned:<br>Johnson | Date Due:<br>5/11/06 |

| Complaint - Reclamo |
|---|

Describe your complaint in the section below. Be as concise as possible, but be sure to include enough identifying data to assist in through investigation (e.g. dates, names, locations, times, etc....) Attach one (1)additional page if necessary, and the Informal Resolution Form with any other supporting documentation.

Describa su telaino en la seccion de abajo. Dea lo mas breve posible, pero asegurese de incluir suficiente informacion para asistir en una completa investigacion (pe.. Fechas, nombres, ubicaciones, tiempos, etc....) Agregue una pagina si es necesario.

In my informal resolution, my counselor stated that the areas I addressed do not justify a reason in which I should be transferred to Petersburg or Butner. First of all, I want officials to verify whether or not my claims are true. If officials verify that my claims are true, then I would like to be transferred and compensated monetary. I am a military prisoner and FBOP Program Statement 5100.07, Chapter 10, section 8(d) states, "The Bureau will accept a Military or Coast Guard inmate recommended for transfer to federal custody if, after examination of all available information, the Bureau can provide appropriate resources for inmate's needs."

My needs are not being met due to the exposure of second-hand smoke, an illegal telephone system, denial of personal property, administrative remedy, and religious diet which are violations of the U.S. Constitution, FBOP policies, regulations, state and federal laws which Rivers are to follow due the contract between GEO and Federal Bureau of Prisons. See a more detail explanation of violations which are attached to the informal resolution. The educational transfer I'm trying to get through me casemanager has nothing to do with the violations of my rights.

Inmate Signature

Administrative Remedy
Step 1 – Response

| | | | |
|---|---|---|---|
| Date Filed: | 05-04-2006 | Remedy ID No.: | 06-092 |
| Inmate Name: | Curry, Bobby | Reg #: | 11324-045 |

This is in response to your Step 1 Administrative Remedy dated May 04, 2006 in which you are requesting to be transferred to Petersburg or Butner and monetary compensated because you are a military prisoner and you feel that your needs are not being met at Rivers.

An investigation revealed that you are appropriately housed at Rivers Correctional Institution as determined by the Federal Bureau of Prisons. When you have been here at Rivers for eighteen months disciplinary free, you may request a transfer through your case manager. Your case will be review at that time for a possible referral for transfer.

After reviewing all available information, your request cannot be granted. If you are not satisfied with this response, you may obtain a Step 2 form from your Counselor. As per RCI policy 12.006, Administrative Remedies, "Step 2 forms must be completed and submitted within five (5) days of the date of the Step 1 response".


S-17-06
Date

David Farmer, AW-P



**Correctional Programs**
**Administrative Remedies**

# Rivers Correctional Institution
## Step 2 Administrative Remedy Form
Paso 1Forma De Remedio Administrativo

| Name:<br>Nombre: | Bobby Curry | Number:<br>Numero: | 11324-045 |
|---|---|---|---|
| Date:<br>Fecha: | 19 May 2006 | Housing Assignment:<br>Unidad Asignada: | B-1-115U |

| For Official Use Only - Para Uso Oficial Solamente | | | |
|---|---|---|---|
| Date Rec'd:<br>5/30/06 | Complaint #:<br>06-092 | Staff Assigned:<br>Johnson | Date Due:<br>6/6/06 |

| Complaint - Reclamo |
|---|

Describe your complaint in the section below. Be as concise as possible, but be sure to include enough identifying data to assist in through investigation (e.g. dates, names, locations, times, etc....) Attach one (1)additional page if necessary.

Describa su telaino en la seccion de abajo. Dea lo mas breve posible, pero asegurese de incluir suficiente informacion para asistir en una completa investigacion (pe.. Fechas, nombres, ubicaciones, tiempos, etc....) Agregue una pagina si es necesario.

No one in the administrative remedy process addressed the violations of the U.S. Constitution, FBOP policies, regulations, state and federal laws that I raised in my complaint. The administration's refusal to address the issues in my complaint is an admission that the issues raised are true.

The administration at Rivers are violating the U.S. Constitution, FBOP policies, regulations, state and federal laws regarding second-hand smoke, religious diets, telephone, personal property, and administrative remedy. See a more detail explanation of violations attached to the informal resolution.

As a military prisoner, I am to be treated the same as other Bureau inmates in accordance with Federal Bureau of Prisons Program Statement 5110.4 and Title 10 U.S.C. section 858, Specifically, Article 58.

As redress, I want to be compensated monetary and transferred to Petersburg or Butner.

Inmate Signature

Administrative Remedy
Step 2 – Response

| | | | |
|---|---|---|---|
| Date Filed: | 05-30-2006 | Remedy ID No.: | 06-092 |
| Inmate Name: | Curry, Bobby | Reg #: | 11324-045 |

This is in response to your Step 2 Administrative Remedy dated 05-30-2006 in which you allege that you are not satisfied with your Step 1 response.

You state that no one in the administrative remedy process addressed the violations of the U.S. Constitution, FBOP policies, regulations, state and federal laws that you raised in your complaint in regards to second-hand smoke, religious diets, telephone, personal property, and administrative remedy. An investigation has revealed that there is no evidence found to support any of the above allegations. You further state that as redress, you want to be compensated monetarily and be transferred to Petersburg or Butner.

Based on the above information and facts, your request for Step 2 Administrative Remedy is denied. You have exhausted all of your Administrative Remedies at this level.

_C- 9- 06_
Date

George Snyder, Warden

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JULY 18, 2006



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      PRIVATIZATION MGT. BRANCH

TO  : BOBBY R CURRY, 11324-045
      RIVERS CI     UNT: B    QTR: B02-109U
      P.O. BOX 840
      WINTON, NC 27986


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 420234-R1       REGIONAL APPEAL
DATE RECEIVED  : JULY 13, 2006
SUBJECT 1      : SMOKE, SMOKING OR TOBACCO RELATED CONCERNS
SUBJECT 2      : MEDICAL DIETS - DELIVERY/PREPARATION OF
INCIDENT RPT NO:

REJECT REASON 1: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                 THAN ONE INCIDENT REPORT (INCIDENT NUMBER).   YOU MUST
                 FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                 OR INCIDENT REPORT YOU WANT ADDRESSED.

REJECT REASON 2: YOU MAY ONLY SUBMIT ONE CONTINUATION PAGE, EQUIV. OF ONE
                 LETTER-SIZE (8.5 X 11) PAPER.  TEXT ON ONE SIDE.  THE
                 TEXT MUST BE LEGIBLE.

REJECT REASON 3: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 15 DAYS OF THE DATE OF THIS REJECTION NOTICE.

ment of Justice

Bureau of Prisons

Regional Administra.    **Remedy Appeal**

or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted this appeal.

From: __Curry, Bobby R.__          __11324-045__          __B-2-109U__          __Rivers__
　　　LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

**Part A—REASON FOR APPEAL**

　　　Rivers officials are not complying with the contract between the FBOP and The GEO Group, Inc. by failing to follow policies established by the FBOP, the U.S. Constitution, applicable Federal, state and local laws and regulations.

　　　I am in the BOP SENTRY for religion-based diet because it was determined by the Chaplain at FCI McKean that I have a bona fide religious belief that require specific practices. I was certified for participation in religion-based diet on 11-24-2004. I arrived at Rivers on 6-29-2005 and I was receiving religion-based diets in transit, however once I arrived at Rivers I was removed from my religion-based diet because James Brown, Rivers chaplain, only allow those of the Jewish faith to participate in religion-base food service. The warden or chaplain may remove a prisoner from his religion-based diet if he shows he is not following the dietary practices of his religion only, not because he prefers one religion over another. I have a first Amendment right to a diet conforming to my religious belief and Rivers have violated that right.

　　　I request a transfer to a federal facility of my choice and monetary compensation.

_17 July 2006_
　　DATE                                        _Bobby R. Curry_
　　　　　　　　　　　　　　　　　　　　　　　　　SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

AUG 0 2 2006

Privatization Mgt. Branch

_____
　　　DATE                                        REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE          CASE NUMBER: _422643-R1_

-----------------------------------------------------------------

**Part C—RECEIPT**
　　　　　　　　　　　　　　　　　　　　　　CASE NUMBER:
Return to: _Curry, Bobby R._          _11324-045_          _B-2-206L_          _Rivers_
　　　LAST NAME, FIRST, MIDDLE INITIAL          REG. NO.          UNIT          INSTITUTION

SUBJECT:
_8/25/2006_
　　DATE          ✪          _Bobby Curry_

USP LVN                                        BP 230(13)

# Smoking is risky for your heart.

Heart disease is the number one cause of death in both men and women.

## Smoking causes:

- Heart disease or stroke
- Blood pressure to go up
- LDL (bad) cholesterol to go up
- HDL (good) cholesterol to go down
- Cancer or emphysema (em-fa-SEE-ma)



Women who smoke and take birth control pills have a greater chance of getting heart disease or having a stroke (brain attack).

The more cigarettes you smoke and the more years you smoke, the riskier it is. But it's never too late to quit.

# Why do people smoke?

**People smoke for many reasons.**

- They have to smoke to feel normal. They're addicted to smoking.
- They smoke to deal with feelings.
- They smoke with friends or family.
- They don't believe that smoking will hurt their health.
- They enjoy smoking.

This is why quitting can be hard. But most smokers want to quit.

# Why do people quit?

**Even people who like to smoke don't like some things about it.**

- They have a health problem or worry about having one.
- They want to prevent a second heart attack or stroke.
- Other people complain about the smell of smoke.
- Their doctors and families ask them to quit.
- They don't like having to depend on smoking.

# Many people who quit smoking are surprised by how good they feel.

**They feel better.**

- They're not as worried about their health.

- Their blood pressure and cholesterol go down.

- If they have diabetes, their blood sugar goes down.

- Their heart and lungs have a chance to get better.

**They feel good about themselves.**

- They're proud of being able to quit.

- Others don't complain about their smoke.

- They don't have to find places where it's OK to smoke.

- They have more time, money and energy for new things.

- They set a good example for their children and grandchildren.

**They're in better shape.**

- They breathe easier and cough less.

- They have more energy.

- They have fewer colds.

- Food tastes better. Their sense of smell comes back.



3

4

# You can get ready to quit.

## Quitting takes work. Here are some ideas to get you started.

■ **Decide you want to quit.**
List your reasons. Put the list where you'll see it often.

**Some reasons to quit:**

☐ I want to feel better.

☐ Smoking bothers other people.

☐ I want to enjoy a longer life.

■ **Decide how you'll quit.**
Ask your doctor about ways to quit. Think about what might work for you.

**Some ways to quit:**

☐ Use gum, the patch or medicine.

☐ Go to a stop-smoking group (phone support, class or Internet group).

☐ Cut down slowly or just stop.

■ **Make a plan.**
Set a date to quit, within the next 2 weeks. Know what you'll do when you want to smoke.

**Some things to do:**

☐ Avoid being around other smokers.

☐ Be more active. Go for walks.

☐ Limit alcohol.

☐ Get rid of ashtrays. Throw out the cigarettes.

■ **Get support.**
Friends and family can make quitting easier. Tell them you're going to quit. Ask them to help.

**Some things friends can do:**

☐ Go for walks with you.

☐ Praise you for not smoking.

☐ Don't smoke around you.

■ **Reward yourself.**
Quitting is hard work. Give yourself credit. Plan what to do with the extra money you'll have when you quit.

**Some rewards:**

☐ Rent a video or see a movie.

☐ Buy something for yourself.

☐ Go out to eat.

## To Learn More

CDC Tips: Tobacco Information
and Prevention Services
www.cdc.gov/nccdphp/osh

QuitNet
www.quitnet.org

This brochure is not intended as a substitute for your health professional's opinion or care.

Written by Kay Clark.

© 2004 ETR Associates. All rights reserved. It is a violation of U.S. copyright law to reproduce any portion of this publication.



ETR Associates
1-800-321-4407
www.etr.org

Title No. 328





# Smoking and Sports

Exhibit 19



# You can get ready to quit.

## Quitting takes work. Here are some ideas to get you started.

- **Decide you want to quit.**
  List your reasons. Put the list where you'll see it often.

  **Some reasons to quit:**
  - ☐ To be in better shape.
  - ☐ Costs too much.
  - ☐ To be healthy.

- **Decide how you'll quit.**
  Find out about ways to quit. Think about what might work for you.

  **Some ways to quit:**
  - ☐ Stop all at once ("cold turkey").
  - ☐ Cut down slowly, then quit.
  - ☐ Use nicotine gum or patches.
  - ☐ Go to a stop-smoking group.

- **Make a plan.**
  Know what you'll do when you want to smoke.

  **Some things to do instead:**
  - ☐ Go for a walk or a run.
  - ☐ Do push-ups or yoga stretches.
  - ☐ Take deep breaths.
  - ☐ Play catch with a friend.

- **Get support.**
  Tell friends and family you're going to quit. Tell them how they can help.

  **Some things friends can do:**
  - ☐ Do something active with you.
  - ☐ Tell you you're doing a good job.
  - ☐ Keep you company when you have an urge to smoke.
  - ☐ Avoid smoking in front of you.

- **Reward yourself.**
  Quitting is a big decision. Give yourself credit. Plan what to do with the extra money you'll have when you quit.

  **Some rewards:**
  - ☐ Get tickets to a ball game.
  - ☐ Buy something for your sport (baseball glove, tennis racket, soccer shoes, etc.).
  - ☐ Take a teammate to dinner.

# Smoking slows down people who are active in sports.

- They can't run as fast or as far.
- They get out of breath easier.
- Their hearts beat faster.
- They get sick more often.

But some active people still smoke.

Why do they do it?



1

# Why do people who are active smoke?

**People smoke for many reasons.**

- They started smoking when they were young. They think they can quit whenever they want to.
- They have friends who smoke.
- They think they can smoke and stay in shape.
- They think being active will make smoking safer.
- They have to smoke to feel normal. They're addicted to smoking.

This is why quitting can be hard.

# Why do people quit?

**People find that smoking and sports don't go together.**

- They may start feeling out of shape.
- Most of the people they play with don't smoke.
- They can't smoke at practice or while playing.
- They don't like being controlled by the need to smoke.



2

# Many active people who quit smoking are surprised by how good they feel.

**They're in better shape.**

- They can breathe easier.
- They can run faster and play harder and longer.
- They have more energy.
- They're healthier.

**They're more in charge.**

- They don't have to find times and places to smoke.
- They don't have to spend money on cigarettes.
- They don't need to smoke.
- They don't have to miss practice because they're sick.

**They feel good about themselves.**

- They know they're playing their best game.
- They're proud of being able to quit.
- They don't smell like smoke.
- Others don't complain about their smoke.



3

4

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: AUGUST 15, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      PRIVATIZATION MGT. BRANCH

TO    BOBBY R CURRY, 11324-045
      RIVERS CI     UNT: B     QTR: B02-206U
      P.O. BOX 840
      WINTON, NC 27986

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID        : 422643-R1        REGIONAL APPEAL
DATE RECEIVED    : AUGUST 2, 2006
SUBJECT 1        : RLGS FOOD:CERTIFIED/NON-FLESH - DELIVERY/PREPARATION OF
SUBJECT 2        :
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS          : THIS ISSUE IS NOT APPEALABLE TO THE BOP.  YOU MUST
                   USE THE GRIEVANCE PROCEDURES AT YOUR FACILITY.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 13, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : BOBBY R CURRY, 11324-045
      RIVERS CI      UNT: B      QTR: B02-206L
      P.O. BOX 840
      WINTON,  NC 27986


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID       : 422643-A1         CENTRAL OFFICE APPEAL
DATE RECEIVED   : SEPTEMBER 1, 2006
SUBJECT 1       : RLGS FOOD:CERTIFIED/NON-FLESH - DELIVERY/PREPARATION OF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : THIS ISSUE IS NOT APPEALABLE TO THE BOP.  YOU MUST
                  USE THE GRIEVANCE PROCEDURES AT YOUR FACILITY.  WE
                  CONCUR WITH THE REGION'S REJECTION OF THIS APPEAL.

REJECTION NOTICE – ADMINISTRATIVE REMEDY

DATE: AUGUST 8, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      PRIVATIZATION MGT. BRANCH

TO  : BOBBY R CURRY, 11324-045
      RIVERS CI     UNT: B    QTR: B02-206U
      P.O. BOX 840
      WINTON,  NC 27986



FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 420234-R2     REGIONAL APPEAL
DATE RECEIVED  : AUGUST 2, 2006
SUBJECT 1      : SMOKE, SMOKING OR TOBACCO RELATED CONCERNS
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOUR APPEAL IS UNTIMELY. REGIONAL APPEALS (BP-10)
                 MUST BE RECEIVED WITHIN 30 DAYS OF THE WARDEN/CCM
                 RESPONSE OR RECEIPT OF THE DHO REPORT.  THIS TIME
                 INCLUDES MAIL TIME.

Department of Justice
Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

| From: | Curry, Bobby R. | 11324-045 | B-2-109U | Rivers |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A—REASON FOR APPEAL**

Rivers officials are not complying with the contract between the FBOP and The GEO Group, Inc. by failing to follow policies established by the FBOP, the U.S. Constitution, applicable Federal, state and local laws and regulations.

Rivers officials have failed to follow the provisions of 28 CFR § 551.160-163. §551.163, Designated smoking areas, states "Warden shall identify "smoking areas", ordinarily outside of all buildings and away from all entrances so as not to expose others to second-hand smoke."

I have never smoked in my life and nevertheless I am being exposed to poisonous toxins of secondhand smoke at Rivers due to how Rivers officials regulate the flow of traffic between the dining hall and housing units, and due to the location of the smoking area. The smoking areas are the main and back recreation yards, and all of the cigarette lighters and designated smoking area signs are located near all the entrance/exits to the yards. I am directed to cross main yard everytime I leave the dining hall except on rainy days. On rainy days you will find a number of inmates and some staff smoking on the sidewalks which is a no smoking area. You will find some smoking on the sidewalks whether it is raining or not, but it is really

27 July 2006          (see attachment)
DATE

_Bobby R. Curry_
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED

AUG 02 2006

Privatization Mgt. Branch

_____
DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

_____
REGIONAL DIRECTOR

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 420234-R2
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**Part C—RECEIPT**

| | | | CASE NUMBER: | |
|---|---|---|---|---|
| Return to: | Curry, Bobby R. | 11324-045 | B-2-206 | Rivers |
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

8/23/2006
DATE

_Bobby Curry_
SIGNATURE, RECIPIENT OF REGIONAL APPEAL

USP LVN        PRINTED ON RECYCLED PAPER

BP-230(13)
APRIL 1982

Regional Administrative Remedy Appeal
Page 2 of 2
Smoking

bad on rainy days. Inmates also sneak and smoke inside the housing units. I am unable to participate in outdoor recreational activities without being exposed to secondhand tobacco smoke, because there are hundreds of inmates smoking on the yard and a number of them stand at the entrance/exit to smoke.

I complained to medical that I was having headaches and trouble breathing because of the smoke and was told that there was not anything they could do about it. In addition, I am at a higher risk for developing a lung disease since it was revealed on a tuberculosis skin test years ago that I had been infected with tubercle bacilli. I have been getting chest x-rays once a year for several years now and the exposure to environmental tobacco smoke (ETS) could weaken my body's defense mechanisms and activate the bacilli. Also, I have to take medication to keep my blood pressure and cholesterol under control since my arrival at Rivers. Rivers staff give away free handouts about the affects of smoking on your blood pressure and cholesterol, yet Rivers officials exposed me to secondhand smoke several times a day. I never had to take medication for my blood pressure or cholesterol level and I believe the reason I have to take it now is because of the exposure to secondhand smoke.

FBOP Program Statement, 1640.04, states, "Medical and public health authorities have established the hazards of tobacco smoke. Of particular concern are the risks posed to nonsmokers by passive inhalation of environmental tobacco smoke (ETS). The Surgeon General has long concluded that scientific research indicated that second-hand smoke is the cause of lung disease in otherwise healthy nonsmokers." An article in the USA Today newspaper dated June 28, 2006 titled, Secondhand smoke debate 'over', states that the U.S. Surgeon General says secondhand smoke is a health risk at any level and the 700-page report cites "massive and conclusive scientific evidence" of the "alarming" public health threat posed by secondhand smoke and finds smoking bans are the only way to protect nonsmokers. The Surgeon General went on to say, "The debate is over" and the science is clear. Secondhand smoke is not a mere annoyance but a serious health hazard.

Rivers officials are negligence in the breach of a legal duty owed by them that causes me injury and have intentional inflicted emotional distress on me, because the warden answered one nonsmoker Inmate Request to Staff by stating that "This is not a smoke free environment. The main yard is a designated smoking area for inmate population. The recreation yard is a very large open space and once you are on the yard, it is your decision to remain in the designated smoking areas or not to remain in the designated smoking area."

I request to be transferred to a federal facility of my choice who is in compliance with the smoking policy and I would like to be compensated monetary for present injuries as well as future damage resulting from exposure to ETS.

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 14, 2006

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : BOBBY R CURRY, 11324-045
      RIVERS CI    UNT: B    QTR: B02-206L
      P.O. BOX 840
      WINTON, NC 27986


FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 420234-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED  : SEPTEMBER 1, 2006
SUBJECT 1      : SMOKE, SMOKING OR TOBACCO RELATED CONCERNS
SUBJECT 2      : MEDICAL DIETS - DELIVERY/PREPARATION OF
INCIDENT RPT NO:

REJECT REASON 1: YOU RAISE MORE THAN ONE ISSUE/RELATED ISSUE OR APPEAL MORE
                 THAN ONE INCIDENT REPORT (INCIDENT NUMBER).  YOU MUST
                 FILE A SEPARATE REQUEST/APPEAL FOR EACH UNRELATED ISSUE
                 OR INCIDENT REPORT YOU WANT ADDRESSED.

September 21, 2006


Office of General Counsel
Federal Bureau of Prisons
320 First St., NW
Washington, D.C. 20534

Dear Sir or Madam:

I am forwarding the Administrative Remedy (BP-231) back to you because
you stated that your reject reason is that I raised more than one issue,
when in fact I only raised one issue (Smoking).

Please address the issue I raised on appeal and return it to me.

Thank you.

BOBBY CURRY 11324-045
Rivers Correctional Institution
P.O. Box 630
Winton, N.C. 27986

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

F
07-199

## I (a) PLAINTIFFS

Bobby Ray Curry, Jr.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

PRO SE PO

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

# 11324-045

## DEFENDANTS

Alberto R. Gonzales, et al.,

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
T

CASE NUMBER  1:07CV00199

JUDGE: James Robertson

DECK TYPE: Pro se General Civil

DATE STAMP: 01/30/2007

 JURY ACTION

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☑ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENS
FOR PLAINTIFF

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☑ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (If not administrative agency review or Privacy Act

| ☐ **G.** *Habeas Corpus/ 2255* | ☐ **H.** *Employment Discrimination* | ☐ **I.** *FOIA/PRIVACY ACT* | ☐ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K.** *Labor/ERISA (non-employment)* | ☐ **L.** *Other Civil Rights (non-employment)* | ☐ **M.** *Contract* | ☐ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC 1983

**VII. REQUESTED IN COMPLAINT** CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $** ○   Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☒ NO   If yes, please complete related case form.

DATE 1.30.07   SIGNATURE OF ATTORNEY OF RECORD NCD

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

forma\js-44.wpd

