UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

AUG  1 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

BOBBY RAY CURRY, JR.                )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    Civil Action No. 07-0199(JR)
                                    )
ALBERTO GONZALES, et al.            )
                                    )
            Defendants.             )
_____)

### PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISS COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER VENUE

COMES NOW PLAINTIFF, Bobby Ray Curry, Jr., pro se, and moves that this Court strike defendants' motion to dismiss complaint, or in the alternative, to transfer venue. Plaintiff respectfully refer the Court to the attached memorandum in support of this motion.

Respectfully submitted,

*Bobby Ray Curry, Jr.*
BOBBY RAY CURRY, JR.
Pro Se

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.           )
                              )
          Plaintiff            )
                              )
     v.                        )    Civil Action No. 07-0199(JR)
                              )
ALBERTO GONZALES, et al.       )
                              )
          Defendants.          )
------------------------------

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plaintiff hereby submit this memorandum of law in support of his complaint. For the reasons set forth below, the plaintiff respectfully request that the Court grants plaintiff's prayer for relief.

### ARGUMENT

**A.  Defendants Have Violated The Religious Freedom Restoration Act and Sovereign Immunity Should be Waived in Accordance With 28 U.S.C. 1346(b).**

The Religious Freedom Restoration Act ("RFRA") applies to federal officers and agencies like BOP. Henderson v. Kennedy, 265 F.3d 1072, 1073 (D.C. Cir. 2001).

BOP is bound by RFRA in discharging its obligations under the 1997 Revitalization Act. See 42 U.S.C. § 2000bb-3(b) ("Federal statutory law adopted after November 16, 1993 is subject to [RFRA].")

BOP, DOJ, and Army's decision to place or keep plaintiff at Rivers C.I. is subject to RFRA scrutiny because RFRA applies "to all

Federal law, and implementation of that law, whether statutory

or otherwise." 42 U.S.C. § 2000bb-3(a) (emphasis added).

The Religious Freedom Restoration Act (RFRA), 42 U.S.C.

§ 2000bb et seq., which applies to claim of federal prisoners,

(see O'Bryan v. Bureau of Prisons, 349 F.3d 399, 401 (7th Cir.

2003)), provides that:

> Government shall not substantially burden a person's
> religion...[unless] it demonstrates that application of
> the burden to the person -
>
> (1) is in furtherance of a compelling governmental interest;
>     and
> (2) is the least restrictive means of furthering that
>     compelling governmental interest.

42 U.S.C.S. § 2000bb(a) & (b).

Consistent with the statute, relevant case law confirms that

the burden of establishing compelling interest and least restrictive

means rests with the government under RFRA. Diaz v. Collins, 114

F.3d 69, 72 (5th Cir. 1997) (holding that the burden of proving

the "compelling interest test" is on the government); Jolly v.

Coughlin, 76 f.3d 468, 477 (2d Cir. 1996) (same); Chemma v.

Thompson, 67 F.3d 883, 885 (9th Cir. 1995) (holding that the

government was wrong in asserting that it did not have the burden

to prove no less restrictive alternative was available). Indeed,

the D.C. Circuit has already noted that defendants bear the burden

of persuasion on this issue. Jackson v. District of Columbia, 254

F.3d at 271 (D.C. Cir. 2001) ("[T]he district court will need to

consider whether BOP ... can demonstrate that alternative place-

2

ment in non-Virginia prison without grooming policies is infeasible.")

By its denial of plaintiff's request for a kosher diet, Rivers violated RFRA, as well as the First Amendment.

RFRA protects the constitutional right of individuals to the free exercise of religion under the First Amendment to the United States Constitution. A government entity violates an individual's rights under the First Amendment and RFRA when the entity substantially burdens a prisoners' sincerely held religious beliefs without employing a practice that is the least restrictive means of furthering a compelling government interest. Gartrell v. Ashcroft, 191 F. Supp.2d 23, 37 (D.D.C. 2003). Failure to accommodate dietary restrictions based upon sincerely held religious beliefs has been found to violate both: (1) RFRA (see Tyson v. Ratelle, 166 F.R.D. 442, 449-50 (C.D. Cal. 1996) (holding genuine issue of material fact existed to deny summary judgment on inmate's RFRA claim regarding to whether inmate was denied religious during Ramadan); and (2) the First Amendment (Beerheide v. Suthers, 286 F.3d 1179, 1192 (10th Cir. 2002) (requiring co-pay from prisoners requesting Kosher meals violates First Amendment); Ashelman v. Wawrzaszek, 111 F.3d 674, 678 (9th Cir. 1997) (failure to provide Kosher meals violates First Amendment)).

Additionally, under First Amendment analysis, "it matters not whether the inmate's religious belief is shared by ten or tens of millions. All that matters is whether the inmate is sincere in

3

his or her own views." Williams v. Bitner, 359 F. Supp.2d 370, 376 (M.D. pa. 2005). See also Morrison v. Garraghty, 239 F.3d 648, 659 (4th Cir. 2001) (holding that "[d]iffering beliefs and practices are not uncommon among followers of a particular creed, and it is not within the judicial function and judicial competence to inquire whether the petitioner or another practitioner more correctly perceives the commands of their common faith" (internal alterations, citations and quotations omitted)). Consequently, since plaintiff's sincerely held religious beliefs include the consumption of a kosher diet, his beliefs are protected under the First Amendment and RFRA.

Under RFRA, the only justification for a burden on the free exercise of religion is that it would further a compelling govern-ment interest, provided that it is the least restive means of furthering that interest. 42 U.S.C.S. 2000bb(a) & (b). Unless Rivers C.I. can meet this burden, plaintiff should be provided with a kosher diet. As Rivers C.I. already provides kosher diets to its Jewish inmates, it is difficult to imagine what compelling interest the prison could assert for its denial of plaintiff's request. (See Exhibits in-#3).

Prior to the inquiry by ACLU of North Carolina, Rivers C.I. failed to individually evaluate plaintiff with regard to the sincerity of his religious beliefs and instead denied his request for kosher meals simply because he does not practice the Jewish

4

faith. This is a violation of the Equal Protection Clause of
the Fifth and Fourteenth Amendment to the United States
Constitution. See Morrison, 239 F.3d at 658 (holding that
plaintiff was denied equal protection because defendants
"never evaluated the sincerity of [plaintiff's] beliefs" as
they would have for other inmates' requests for religious
items).

Under BOP's policy, an inmate may be removed from his religion-
based food service  diet by an institution's Warden or Chaplain
if he shows indicia of not following the dietary practices of
his religion.

A substantial burden on a sincerely held religious belief
exists where the government imposes punishment or "denies...
a benefit because of conduct mandated by religious belief, thereby
putting substantial pressure on an adherent to modify his behavior
and to violate his beliefs." Woods v. Evatt, 876 F. Supp. 756, 762
(D.S.C. 1995) (quotations and citations omitted).

Section 1346(b) grants the federal district courts jurisdiction
over a certain category of claims for which the United States has
waived its sovereign immunity and "render[ed]" itself liable.
Richards v. United States, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7
L.Ed.2d 492 (1962). This category includes claims that are:

"[1] against the United States, [2] for money damages,...
[3] for injury or loss of property, or personal injury or death

5

[4] caused by negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission ocurred." 28 U.S.C. § 1346(b).

As noted above, to be actionable under § 1346(b), a claim must allege, inter alia, that the United States "would be liable to the claimant" as "a private person" "in accordance with law of the place where the act or omission ocurred."

In the instant case, it was determined by the prison chaplain at FCI McKean in Pennsylvania that plaintiff has a bona fide religious belief. The plaintiff was certified for religion-based diet participation which was entered into BOP SENTRY computer system on November 14, 2004. The plaintiff received kosher meals at Lewisburg and Atlanta's holdovers after sentry verification during transit in route to Rivers C.I.. The plaintiff did not do anything to indicate he was not following the dietary practices of his religion. Prisoners are not removed from their religion-based diets because they transferred and definitely not because they do not follow the Jewish faith.

Plaintiff's complaint does contain colorable basis for such a waiver. Therefore, to the extent plaintiff asserts claims for monetary damages against BOP, DOJ, and Army or against individual defendants in their official capacities, courts generally accept a complaint's factual allegations as true and view all reasonable

6

inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974).

**B.    The Court Erred When it Denied Plaintiff's Motion to Perfect Service Against Individual Defendants**

When a plaintiff is granted in forma pauperis status, the district court is required to serve process for plaintiff. See 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [in forma pauperis] cases"....) (emphasis added); Fed.R.Civ.P. 4(c)(2) (the appointment of a U.S. marshal or other officer to perfect service "must be made when the plaintiff is authorized to proceed in forma pauperis pursuant to 28 U.S.C. § 1915....") (emphasis added). Thus, the responsibility for failure to serve defendants rest with the Marshal or with the district court, not with plaintiff.

Numerous circuits have held that good cause exists to excuse a plaintiff's failure to serve where the plaintiff is proceeding in forma pauperis and is therefore entitled to rely on service by the U.S. Marshal. Moore v. Jackson, 123 F.3d 1082, 1085-86 (8th Cir. 1997) Byrd v. Stone, 94 F.3d 217, 219-20 (6th Cir. 1996); Dumaguin v. Sec'y of Health & Human Servs., 28 F.3d 1218, 1221 (D.C. Cir. 1994); Puett v. Blandford, 912 F.2d 270, 275 (9th Cir. 1990); Sellers v. United States, 902 F.2d 598, 602 (7th Cir. 1990); Romandette v. Weetabix Co., 807 F.2d 309, 311 (2d Cir. 1986). Because there is no evidence in the record that plaintiff failed to

7

cooperate with the U.S. Marshals or was otherwise not entitled to their service, the plaintiff is not culpable for their failure to comply with the Federal Rules of Civil Procedure or the court's orders. Cf. Johnson v. U.S. Postal Serv., 861 F.2d 1475, 1479-80 (10th Cir. 1988) (holding that U.S. Marshal could not be held accountable for plaintiff's failure to serve where plaintiff's complaint named the wrong defendant).

In the instant case, plaintiff had moved separately for the court officers to effect personal service upon defendants and the court denied that motion on May 16, 2006. Without specific instructions, it is understandable that a pro se litigant might fail to fulfill all of Rule 4(i)'s requirements. Accordingly, claims against the individual defendants should not be dismissed.

C.    **Defendants Are Not Entitled To Qualified Immunity**

Government officials are entitled to qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate such law.

On June 18, 1993, the Supreme Court decided Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In Helling, the Court held that the Eighth Amendment prohibits prison officials from exhibiting deliberate indifference to future health problems that an inmate may suffer as a result of current prison conditionsn even if the inmate "shows no serious current symptoms." Id. at 35, 113 S.Ct. 2475.

8

The Supreme Court identified both objective and subjective elements. Objectively, a plaintiff "must show that he himself is being exposed to unreasonably high levels of ETS." Id. The objective factor not only embraces the scientific and statistical inquiry into the harm caused by ETS, but also "whether society considers the risk to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Id. at 36, 113 S.Ct. 2475. Subjectively, the plaintiff must prove deliberate indifference, considering the officials' "current attitudes and conduct" any policies that have been enacted.

After Helling, it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health. See Rochon v. City of Angola, 122 F.3d 319, 320 (5th Cir. 1997) (denying qualified immunity on ETS in light of Helling). A court need not have passed on the identical conduct in order for its illegality to be "clearly established." See LaBounty, 137 F.3d at 74.

BOP, DOJ, and Army's decision to place or keep plaintiff at Rivers is subject to scrutiny under the Eighth Amendment by plaintiff alleging that prison officials unconstitutionally exposed him to environmental tobacco smoke.

In December 2001, officials at Rivers adopted a smoking policy to established a clean air environment and to protect the health and safety of staff and inmates at Rivers in an effort to

9

fulfill employer responsibilities as established by both judicial and legislative mandates. See RCI Policy 03.016.

This policy prohibits smoking in building andoonssidewalks, but does not regulate smoking on the recreation yards which are public areas allowing inmates to smoke freely and inmates are directed to cross the recreation yard several times a day by staff.

BOP Program Statement 1640.04 states, "Medical and public health authorities have established the hazards of tobacco smoke. Of particular concern are the risks posed to nonsmokers by passive inhalation of environmental tobacco smoke (ETS). The Surgeon General has long concluded that scientific research indicated that second-hand smoke is a cause of lung disease in otherwise healthy nonsmokers."

Warden Synder responded to an Inmate Request to Staff, "This is not a smoke free environment. The main yard is a designated smoking area for inmate population. The recreation yard is a very large open space and once you are on the yard, it is your decision to remain in the designated smoking areas or not remain in the designated smoking area."

There is a two-step process that must be followed by the federal court and the plaintiff has met the two-pronged test. [1] The constitutional right implicated by plaintiff's complaint is grounded in the Eighth Amendment. The Eighth Amendment places a duty on prison officials to provide humane conditions of

10

confinement. Farmer v. Brennan, 511 U.S. 825 (1994), 114 S.Ct.
1970, 1976, 128 L.Ed.2d 811 (1994); [2] the right was "clearly
established" at the time of violation in Helling v. McKinney,
509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Accordingly, under the facts in the complaint, the named
individual defendants are not entitled to qualified immunity.

## D. Plaintiff has Stated a Claim Which Relief Can be Granted

The court stated a complaint "should not be dismissed
for failure to state a claim unless it appears beyond doubt that
the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief." Cruz v. Beto, 450 U.S. 319,
322 (1972).

In Conley v. Gibson, 355 U.S. 41, 45-46 (1957), the Supreme
Court said that in considering a motion to dismiss, a pro se
complaint should be held to less strict standards than a motion
drafted by a lawyer.

### 1. Plaintiff states basis for Bivens claims brought against defendants Gonzales, Lappin, and Harvey

Plaintiff has standing because defendants have a 'continuing
responsibility" for certain purposes of inmates placed at Rivers.

This circuit has rejected the notion that causation only lies
when an agency is "the direct actor in the injurious conduct."
America's Community Bankers v. FDIC, 200 F.3d 822, 827 (D.C. Cir.
2000) (citation omitted). Rather causation is demonstrated on a
showing of "agency action which implicitly permits a third party

11

to behave in an injurious manner," <u>America's Community v. FDIC</u>,
200 F.3d 822, 827. Defendants fall squarely within this
"implicit permission" standard. Indeed plaintiff would not be
subjected to Rivers unconstitutional acts but for defendants'
decision to send him to Rivers. As the court has recently held,
defendants "cannot absolve themselves of their duties to District
prisoners by contracting for services of a third party." <u>Scott
v. District of Columbia</u>, Civ. No. 98-1645, at 10-11 (D.D.C. Nov.
22, 1999).

Similarly, plaintiff has demonstrated redressibility under
the "continuing responsibility" theory of this case. The defendants,
pursuant to federal law, have the responsibility for over-seeing,
controlling, managing, and supervising the federal system, includ-
ing Rivers, and those persons incarcerated therein.

2.    **Plaintiff has stated a valid Religious Freedom
      Restoration Act (RFRA) claim**

The plaintiff has met the burden of showing a substantial
burden on his sincerely held beliefs already in this memorandum
so the burdens then shifts to the government to demonstrate that
application of a burden to the plaintiff's religion is: (1) in
furtherance of a compelling government interest and (2) is the
least restrictive means of furthering that compelling government
interest. 42 U.S.C. § 2000bb-1(a), (b).

a.    **Plaintiff was denied a kosher diet because he
      does not practice the Jewish faith**

Plaintiff allegations regarding the denial of a kosher diet

12

are not confusing, difficult to discern, or contradictory.
Rivers Chaplain Brown flatly denied plaintiff a kosher diet in
July 2005 because he does not practice the Jewish faith. Chaplain
Brown interviewed plaintiff about his Santeria religion in
December 2006 only after ACLU of North Carolina inquired about
the denial of a kosher diet on behalf on the plaintiff, and this
was the only time the plaintiff was interviewed. In fact during
the interview, Chaplain Brown was amazed that plaintiff's dietary
laws in his faith were the same as those in the Jewish faith. All
the requisite information and documentation necessary to demon-
strate that plaintiff has a sincerely held belief that is religious
in nature is in the BOP SENTRY computer and the Inmate Central
File. Chaplain Brown can get access to both.

As set forth in the attached declarations, several inmates
explain that Chaplain Brown denied them a kosher diet because
they did not practice the Jewish faith. (Exhibits in #2).

### b. Plaintiff demonstrates a sincerely held belief

Prison chaplain at FCI McKean in Pennsylvania determined that
plaintiff has a bona fide religious belief and certified plaintiff
for religion-based diet participation which was entered into BOP
SENTRY computer on November 14, 2004.

Chaplain Brown misled plaintiff and had plaintiff thinking
that a vegetarian diet is in fact a religion-based diet when he
offered plaintiff this diet in December 2006. The form for this
diet is titled RIVERS CORRECTIONAL INSTITUTION AUTHORIZATION

13

FOR RELIGIOUS DIET PARTICIPATION VEGETARIAN DIET, however after
further investigation, the plaintiff found out that a vegetarian
diet is a regular diet with a meat substitute and prepare with
the regular meal. (See Exhibits in #3).

     c.     **Plaintiff does allege a substantial burden**

The plaintiff never said that any applicable RCI or BOP
policies or regulations substantially burdens his Santeria beliefs.
The plaintiff received kosher meals in the BOP. It is Chaplain
Brown's interpretation of the policies and his preference of one
religion over another that place a substantial burden on inmates.
The plaintiff was forced to violate the tenets of his religion
because he was unable to receive kosher meals and was served meals
that combine meat and dairy products.

Chaplain Brown actions is more than just a inconvenience and
caused a significant inhibit or constrain on his religious conduct
or expression.

Additionally, under First Amendment analysis, "it matters
not whether the inmate's religious belief is shared by ten or tens
of millions. All that matters is whether the inmate is sincere in
his or her own views." William v. Bitner, 359 F.Supp.2d 370, 376
(M.D. Pa. 2005). See also Morrison v. Garraghty, 239 F.3d 648, 659
(4th Cir. 2001) (holding that "[d]iffering beliefs and practices
are not uncommon among followers of a particular creed, and it
is not within judicial function and judicial competence to inquire

14

whether the petitioner or another practitioner more correctly perceives the commands of their common faith" (internal alternations, citations and quotations omitted)).

    3.   **Plaintiff has stated a valid First Amendment claim already in this memorandum**

    4.   **Plaintiff has stated a valid Fifth or Fourteenth Amendment Equal Protection claim already in this memorandum**

    5.   **Plaintiff stated a valid RLUIPA claim because Rivers is not a federal prison**

See 28 U.S.C. § 2671. "As used in this chapter and sections 1346(b) and 2401(b) of this title, the term "Federal agency" includes the executive departments, the judicial and legislative branches, the military departments, independent establishments of the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States."

Plaintiff did not seek monetary relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 (b), because under the FTCA, Rivers is not considered a federal agency. (See Exhibit in #4).

Since Rivers is not a federal institution, the protection afforded to institutionalized persons under [RLUIPA] applies to plaintiff who is not housed in a federal institution. In addition, RLUIPA should be applied to private contract facilities of the BOP because these contract facilities are not federal and they receive money from the BOP which is the federal government. This

financial assistance gives Congress the right to pass laws that it might not otherwise be able to pass. Mayweathers v. Newland, 314 F.3d 1062 (9th Cir. 2002); Charles v. Verhagen, --F.3d--, No. 02-3572, 2003 WL 22455960 (7th Cir. Oct. 30, 2003).

### 6.    Plaintiff has stated a valid Eighth Amendment claim already in this memorandum

Plaintiff stated in his complaint that the main and rear recreation yards are the designated smoking areas, and all designated smoking area signs and cigarette lighters are posted near all entrances/exits in violation of 28 C.F.R. 551.163(a). The designated smoking area signs are posted to inform inmates on the yards that the entire yard is the smoking area, not that you must remain in a particular area to smoke. The recreation yard is a public area allowing inmates to smoke freely and in-mates are directed to cross the recreation yard several times a day by Rivers officials.

In his response to an Inmate Request to Staff, Warden Synder stated "the main yard is a designated smoking area for the inmate population." Warden Synder also acted with "deliberate indifference" when he stated "the recreation yard is a very large open space and once you are on the yardn it is your decision to remain in the designated smoking area or not to remain in the designated smoking area." The recreation yards are the only places nonsmokers can participate in outdoor activities. There are are hundreds of inmates walking and smoking on the recreation yards. Estelle v.

16

Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L,Ed.2d 251 (1976)
(analyzing claims of present harms for potential Eighth
Amendment violations). Thus, the Eighth Amendment not only
protects inmates suffering from current unconstitutional prison
conditions, but also protects inmates against prison conditions
which threaten to cause future health problems.

In the instant case, plaintiff has met the standards set
forth in Helling to show that his exposure to ETS rises to level
of Eighth Amendment violation.

7.    **Plaintiff's confinement in a non-federal contracted
      prison has resulted in different treatment from
      other federal prisoners**

In the instant case, the plaintiff explain during the admin-
istrative remedy process and in this memorandum that his confine-
ment in a non-federal contracted prison resulted in different
treatment from inmates housed in federal facilities because:

> [1] Any contractor with the United States is not
> considered a federal agency, 28 U.S.C. § 2671, there-
> fore plaintiff is denied his right to file a claim
> under FTCA, because Rivers is not a federal agency.
> A right afforded inmates at federal facilites.
>
> [2] BOP facilities are nonsmoking facilities and
> plaintiff is being denied the clean air environment
> afforded prisoners in federal facilities.
>
> [3] Plaintiff was certified for kosher diet partici-
> pation in the BOP and Rivers chaplain denied plaintiff
> that right because he is not of the Jewish faith.
>
> [4] Rivers have two (2) separate, distinct procedures
> within the administrative remedy process, therefore

17

> plaintiff is unable to have certain issues (Rivers policies, procedures, practices, and employees) formally reviewed by high level Bureau officials.
>
> [5] Plaintiff pays twice as much for phone calls at Rivers than he would at a federal institution.

Therefore, plaintiff avers that the defendants violated 10 U.S.C. § 858 by transferring him to a non-federal contracted prison because he is not being treated the same as prisoners housed in federal prisons.

## E. District of Columbia is Appropriate for this Action

The GEO GROUP, INC. is a for-profit corporation formed and existing under the laws of the State of Florida, and having its principal place of business in the state of Florida. GEO is in the business of building, owning, operating, and managing correctional, detention, mental health, and residential treatment facilities in the United States and around the world. GEO is a publicly-traded corporation and is listed on the New York Stock Exchange under ticker symbol "GEO." As of December 2006, GEO reports that it operates a total of 62 correctional, detention and mental health facilites, with a capacity of over 54,000 beds. In 2006, GEO had revenues totaling over $860 million and profits of over $30 million. One of the correctional facilities built, owned, operated, and managed by GEO, pursuant to a written contract with the BOP, is Rivers.

Defendant Alberto Gonzales is employed as the United States Attorney General at the Department of Justice ("DOJ") in Washington,

18

D.C. He is legally responsible for overseeing, controlling, managing, and supervising each institution under his juris- diction, including the BOP. The DOJ, pursuant to federal law, mandated that its department, the BOP, have the responsibility for over-seeing, controlling, managing, and supervising the federal prison system, including Rivers, and those persons incarcerated therein.

Defendant Harley Lappin is employed by the BOP as its Director. As the Dirctor of the BOP, Defendant Lappin is charged with custody and care of plaintiff and all inmates incarcerated at Rivers. Defendant Lappin is responsible for overseeing the administration of the BOP and approving all BOP policies relating to treatment of persons under its care, including those persons incarcerated at Rivers.

Defendant Francis J. Harvey was employed as the Secretary of the Army at the Department of Defense in Washington, D.C. He was legally responsibility for the overall operation, welfare, and accountability for the U.S. Army and for all military prisoners in custody of the BOP. The Secretary of the Army retains clemency authority for military prisoners, and can assume parole approval authority in the absence of the U.S. Parole Commission. In fact, the Secretary of the Army has disapproved plaintiff's request for clemency every year since his incarceration and Army officials have denied BOP officials recommendations to return plaintiff's forfeited good time on several occasions ( Exhibits in #5).

19

GEO is the second largest private prison operator in the
United States. Approximately one-third of its business is with
agencies of the U.S. government that are  headquartered in the
District of Columbia, including the BOP, U.S. Marshal Service,
and U.S. Immigration and Customs Enforcement. On information
and belief, GEO, acting through its employees and agents, actively
and continuously solicits business from federal agencies in the
District of Columbia by providing them with targeted sales and
marketing proposals; responding to Requests for Proposals ("RFP");
meeting with federal officials to discuss GEO's commercial
capabilities; and engaging in other written, telephonic and
electronic communications in and directed at the District of
Columbia that are intended to further GEO's commercial interests.
In its corporate documents GEO highlights the company's "long-
term customer relationships" with these federal agencies, and
states that GEO "intend[s] to capitalize on our long-term
relationships with governmental agencies to continue to grow our
correctional, detention and mental health facilities management
services and to become a preferred provider of complementary
government-out-sourced services." Through its commercial sales
and marketing efforts targeted at customers in the District of
Columbia, GEO has successfully competed for more than a dozen
federal contracts from federal agencies in the District of
Columbia. GEO maintains a registered agent in the District of
Columbia. On information and belief, GEO, acting through its

20

employees and agents, maintains a permanent business presence
in the District of Columbia.

In 1998, the Federal Bureau of Prisons issued an RFP seeking
a private contractor to house a portion of the 50 percent of D.C.
Code felony offenders who by law must be incarcerated in private
prisons. On information and belief, GEO submitted a response to
that RFP in the District of Columbia, and negotiated with the BOP
over the commercial and other terms of such an agreement in the
District of Columbia, including GEO's obligations with respect to
provision of medical, dental, and mental health care. GEO's offer
was accepted, and a contract between GEO and BOP to house prisoners
at Rivers (the "Rivers Contract") was formed, in the District of
Columbia.

Pursuant to Rivers contract, GEO has agreed, under BOP super-
vision and control, to house low-security, male, D.C. Code felony
offenders at GEO's Rivers facility. Rivers is a private, for-profit
correctional facility owned and operated by GEO. It is located at
145 Parker's Fishery Rd., Winton, N.C. 27986. The BOP has sent
thousands of D.C. Code felony offenders to Rivers since the facility
opened in 2001. Rivers currently housed approximately 1,300 persons,
the large majority of whom are D.C. Code felony offenders.

The Rivers Contract provides for the involuntary relocation
of D.C. residents from the District of Columbia to Rivers, thereby
rendering those individuals wholly dependent on GEO for their
medical, dental, and mental health care and related services. By

21

entering into the Rivers Contract, GEO, under BOP supervision and control, assumed responsibility for the medical treatment of persons incarcerated at the Rivers facility, and voluntarily submitted to long-term regulation and oversight by the BOP in the District of Columbia. The initial term of the Rivers Contract was three years with seven one-year options exercisable by the BOP which, on information and belief, has led GEO to engage in further sales, marketing, and other commercial activity in the District of Columbia related to the Rivers Contract each year since 2002, in their successful efforts to persuade BOP to extend the Rivers Contract for additional periods.

GEO has performed and is obligated to perform substantial and material obligations under the Rivers Contract in the District of Columbia. By way of example only, GEO is obligated to: (a) provide periodic performance reports to the BOP in the District of Columbia; (b) report to the BOP in the District of Columbia certain defined events that occur at Rivers, such as death of a prisoner; (c) seek and obtain approval from the BOP in the District of Columbia before sending a Rivers prisoner outside the facility for medical treatment; (d) submit to the BOP in the District of Columbia all Rivers policies and procedures relating to medical, dental, and mental health treatment, and obtain BOP approval for all such policies; and (e) seek approval from BOP in the District of Columbia before releasing a prisoner. GEO submits monthly invoices for services provided at the Rivers

22

facility to the BOP in the District of Columbia, and the BOP approves and makes payment to GEO in the District of Columbia.

In the instant case, you will find under the Previous Law-suit heading of the complaint that plaintiff did seek to litigate the factual issues regarding conditions of confinement at Rivers by filing his case in the Eastern District of North Carolina, Docket No. 5:05-CT-876-D, suing Wackenhut Correctional Corporation (now "GEO Group Inc.") and Rivers officials. As a result, the North Carolina court dismissed action with prejudice stating that because these "defendants are private individuals, not government actors," Bivens is inapplicable and does not subject the private parties to liability. Holly v. Scott, 434 F.3d 287, 290 (4th Cir. 2006). The court also stated that Wackenhut Correctional Cor-poration (now "GEO Group Inc.") is dismissed as improper party be-cause it it a private corporation not amenable to such a suit. See Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66-74 (2001).

After the Eastern District of North Carolina dismissed the case, plaintiff seek to litigate the case in the County of Hertford Superior Court Division in Winton, North Carolina, Docket No. 06-CVS-528, against GEO and Rivers officials and the case was dis-missed without merit in fact and law.

Finally, it is worth noting that the entity which arguably has the biggest stake in this litigation, GEO, maintains a re-gistered agent in the District of Columbia. Consequently, the court is faced with the prospect of ruling on the constitutionality

23

of a policy promulgated and enforce by a private contractor under BOP supervision and control, to house low- security, male, D.C. Code offenders.

Therefore, the District of Columbia is clearly appropriate to litigate this action and it would be frivolous to transfer this action to the Eastern District of North Carolina.

### CONCLUSION

For all of the foregoing reasons, the plaintiff should be granted the prayer for relief requested.

Respectfully submitted,

*Bobby Ray Curry, Jr.*

BOBBY RAY CURRY, JR., Pro Se

Date: 25 July 07

24

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _25th_ day of July, 2007, I caused service of the foregoing **PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' MOTION TO DISMISSED OR, IN THE ALTERNATIVE, TO TRANSFER VENUE** to be made on the defendants' attorney via first class mail:

> QUAN K. LUONG
> Special Assistant United States Attorney
> 555 Fourth Street, N.W., Room E-4417
> Washington, D.C. 20530

Respectfully submitted,

*Bobby Ray Curry, Jr.*
BOBBY RAY CURRY, JR.
CI Rivers
P.O. Box 630
Winton, N.C. 27986
Register No. 11324-045

(EXHIBITS IN #1)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.          )
                             )
          Plaintiff          )
                             )
     v.                      ) Civil Action No. 07-0199 (JR)
                             )
ALBERTO GONZALES, et al.     )
                             )
          Defendants.        )
_____    )

### AFFIDAVIT

I, Dave Green, having knowledge of the facts, herein, and being competent to testify, do swear to and affirm the following:

1. I am incarcerated at Rivers Correctional Institution in Winton, North Carolina.

2. I adhere to the Jewish faith.

3. The Rivers Correctional Institution religious services department (headed by Chaplain James Brown) and the food services department (headed by Carolyn Wolfe) have made available to me kosher meals for breakfast, lunch, and dinner.

4. Rivers Correctional Institution has accommodated my right as prisoner to receive a diet consistent with my religious beliefs.

                              _Green 69901-053_____
                              DAVE GREEN, AFFIANT

State of North Carolina )
                        ) SS
County of Hertford      )

On this 10th day of June, 2007, personally appeared before me, the said named Dave Green to me known and known to me to be the person described in and who executed the foregoing instrument and he acknowledge that he executed the same being duly sworn by made oath that the statements in the foregoing instrument are true.

My Commission expires:

_April 20, 2011_              _Cindy L. Vann_____
                              NOTARY PUBLIC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.   )
          )
   Plaintiff   )
          )
  v.        )
          ) Civil Action No. 07-0199(JR)
ALBERTO GONZALES, et al.  )
          )
   Defendants.  )
_____)

## AFFIDAVIT

I, Sergio Khorosh, having knowledge of the facts herein, and being competent to testify, do swear to and affirm the following:

1. I am incarcerated at Rivers Correctional Institution in Winton, North Carolina.

2. I adhere to the Jewish faith.

3. The Rivers Correctional Institution religious services department (headed by Chaplain James Brown) and the food services department (headed by Carolyn Wolfe) have made available to me kosher meals for breakfast, lunch, and dinner.

4. Rivers Correctional Institution has accommodated my right as a prisoner to receive a diet consistent with my religious beliefs.

         _Sergio K._ 57771-054
         SERGIO KHOROSH, AFFIANT

State of North Carolina )
        ) SS
County of Hertford  )

On this _7th_ day of June, 2007, personally appeared before me, the said named Sergio Khorosh to me known and known to me to be the person described in and who executed the foregoing instrument and he acknowledge that he executed the same being duly sworn by me, made oath that the statements in the foregoing instrument are true.

My Commission expires: 4/1/09

         _Rita C. Williams_
         NOTARY PUBLIC

## SWORN AFFIDAVIT OF LACY DAVIS III

I, Lacy Davis III, having knowledge of the facts herein, and being competent to testify, do swear to and affirm the following:

1. I was an incarcerated prisoner at Rivers Correctional Institution, Winton, North Carolina, from August 2004 through May 2006.

2. I have been an adherent of the Jewish faith for my entire life.

3. The Rivers Correctional Institution religious services department (headed by James Brown) and the food service department (headed by Carolyn Wolfe) have made available to me kosher entrees and meals, prepared separately from the regular dining lines, for breakfast, lunch, and dinner, continuously during my incarceration for the past twenty-one (21) months.

4. Rivers Correctional Institution has accomodated my right as a prisoner to receive a diet consistent with my religious beliefs (i.e. Judiasm).

/s/ _____
Lacy Davis III
Fed. Reg. No. 17348-016
Rivers Correctional Inst.
P.O. Box 630 / Unit A
Winton NC 27986-0630

Sworn to before me this
7th day of June 2006.

_____
NOTARY PUBLIC

Embossed Hereon Is My
Hartford County, North Carolina Notary Public Seal
My Commission Expires July 12, 2010
PAMALA DAVIS

**(EXHIBITS IN #2)**

IN THE

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF COLUMBIA


BOBBY RAY CURRY, JR.,
     Plaintiff,

v.                              Civil Action No. 07-0199(JR)

ALBERTO GONZALEZ, et al.,
     Defendants.


STATE OF NORTH CAROLINA )
                      )   SS:
COUNTY OF HERTFORD    )


## AFFIDAVIT OF RUSSELL HAMILTON


    I, Russell Hamilton, being of very sound mind and under abso-
lutely no duress whatsoever, **HEREBY SWEAR** to the following:


    1)  That on February 6, 2002, I was transferred to Rivers
Correctional Institution, in Winton, North Carolina, from the D.C.
Jail in Washington;

    2)  That on February 21, 2002, three new inmates——namely
Mohamed Yagoub, myself, and one Rastafarian whose name is unknown

- 1 -

to me—were in attendance (among approximately fifty onther inmates) at the "A & O" (Admission & Orientation) session being conducted in the institution's visitation hall. The Rastafarian inquired as to the institution's policy regarding religious meals, and James K. Brown responded to the entire group present that Rivers Correctional Institution does not provide religious meals to inmates. In response to follow-up questions from Mr. Yagoub and I, James K. Brown stated that if anything on the regular diet trays was incompatible with our faiths, to throw it away;

3)  That in October of 2002,        James K. Brown circulated a memorandum on the compound, announcing that vegetarian trays would be made available to persons whose religions dictated such;

4)  That subsequently, inmates Marvin Kotler, John Murphy, Ricardo Gutierrez, and Lacy Davis began receiving kosher diets; this action was completed by the food service department pursuant to James K. Brown's instruction after he was contacted by the Aleph Institute on behalf of inmate Marvin Kotler. The aforementioned inmates (Kotler, Murphy, Gutierrez, and Davis) are all practicing Jews;

5)  That in the years 2002, 2003, and 2004, I had repeated conversations with James K. Brown about the inadequacy of the "vegetarian trays" that he presided over, ostensibly in the name of religion;

6)  That in the year 2004, James K. Brown informed three inmates —namely Kary Lightner, Michael Jackson, and myself—that only Jews would be allowed to receive kosher diets, and that the three of us would not on account of the fact that we were (and are) Muslims;

- 2 -

7)  That currently, as of July 23, 2007, Muslims continue to be precluded from receiving kosher diets on account of the fact that Muslims do not practice the Jewish faith;

8)  That inmates Kevin Gordon (of the Islamic sect 'Nation of Islam'), Darryl Payne (of the Islamic sect 'Moorish Science Temple of America') and I (of the majority class of Muslims worldwide) have been informed more than once, each, that **because we are not practitioners of the Jewish faith**, we are precluded from receiving religious diets, kosher diets, or common-fare meals.  The only option made available to us is a "vegetarian" diet which is prepared by replacing meat items on the regular trays with peanut butter or sliced cheese;

9)  That for approximately five-and-a-half years, I have been prohibited by James K. Brown from receiving a kosher diet, because I am not a Jew; and

10)  That I am competent to testify to these matters in a court of law and will do so at any time as requested.


I declare under the penalty of perjury that the foregoing is true and correct, to the best of my knowledge, belief, and understanding.

Russell Hamilton  #30683-007
Rivers Correctional Institution
P.O.Box 630 / Unit D3
Winton  NC  27986-0630

Sworn to before me
this the 23 day
of July 2007

NOTARY PUBLIC: T. Elsa Hedgpeth

My commission expires: 4-20-2011

- 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.       )
                             )
       Plaintiff,      )
                             )
   v.               )   CIVIL ACTION 07-0199(JR)
                             )
ALBERTO GONZALEZ, et al.,   )
                             )
       Defendants.    )
--------------------------------

## AFFIDAVIT OF KARY LIGHTNER

    I, Kary Lightner, being of sound mind and under no duress, **HEREBY SWEAR** to the following:

    1) That approximately three years ago, I met with Chaplain James K. Brown along with two other inmates—Michael Jackson and Russell Hamilton—to discuss our concerns about the institution's handling of our religious dietary needs, specifically with regards to the Ramadan fast and the everyday religious diet;

    2) That Chaplain James K. Brown informed us that only Jews could receive religious diets, and that all other inmates with re-ligious dietary needs had to eat "vegetarian trays", wherein the meat on the tray is simply substituted with sliced cheese or peanut butter every day;

    3) That as of today, I am a practicing Muslim and I am not permitted to receive a kosher diet because Chaplain James K. Brown has stated that those are reserved for Jews only;

    4) That I am competent to testify to these matters in a court of law.

                          _Kary Lightner_ _____

                          Kary Lightner #
                          Rivers Correctional Institution
                          P.O.Box 630 / Unit D3
Sworn to before me              Winton NC 27986-0630
this the **23** day
   of July 2007

NOTARY PUBLIC: _T. Elisa Heckstall_

My commission expires: _9-20-2011_

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.          )
                             )
          Plaintiff,         )
                             )
     v.                      )  CIVIL ACTION 07-0199(JR)
                             )
ALBERTO GONZALEZ, et al.,    )
                             )
          Defendants.        )
------------------------------)

## DECLARATION OF BOBBY RAY CURRY, JR.

In accordance with 28 U.S.C. § 1746, I Bobby Ray Curry, Jr. being of sound mind make the following declaration under the penalty of perjury, pertinent to the above-style and numbered case.

1. I am a member of the Santeria faith and I am incarcerated at Rivers Correctional Institution, owned and operated by the GEO Group, Inc., in Winton, North Carolina, and I have been incarcerated at Rivers since June 29, 2005.

2. Upon my arrival at Rivers, I sent an Inmate Request to Staff to Chaplain Brown to inform him that I am to receive kosher meals, and I did not receive a response.

3. During orientation in July 2005, I spoke with Chaplain Brown after one of the orientation classes and told him that I forwarded him an Inmate Request to Staff regarding my kosher diet and did not receive a response. I told him that I received kosher meals in the Bureau of Prisons.

4. Chaplain Brown told me that only those inmates of the Jewish faith are allowed kosher meal at Rivers and he had only two inmates receiving kosher meals at that time.

5. It wasn't until December 2006 that Chaplain Brown interviwed me in reference to the Santeria faith. He scheduled this interview because ACLU of North Carolina in a letter dated December 11, 2006 contacted Warden Synder to inquire the reason I was being denied a kosher diet and asked Warden Synder to responded by December 27, 2005.

6. The first thing that Chaplain Brown asked me was whether I was aware of the letter that the warden received from ACLU. Chaplain Brown told me during the interview that he was surprise how closely my dietary laws of my faith and that of the Jewish faith. He also admitted that he knew little of the Santeria faith and he only found a little information on the internet.

7. Chaplain Brown told me that he still could not give me a kosher diet and offered me a vegetarian diet two days after the interview, however I refused because a vegetarian is a regular diet with a meat substitute. I found that out from Ms Carolyn Wolfe, food service manager, during my inquries, however Chaplain Brown pass vegetarian diets off as religious diets.

8. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this _24th_ day of July, 2007.

State of _NC_ ,County of _Pasquatank_
Signed before me on this _24th_ day
of _July_, _2007_ by _Bobby R Curry_ Jr.
Notary Public: _Alita C Williams_

Respectfully submitted,

_Bobby Ray Curry, Jr._
BOBBY RAY CURRY, JR.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.       )
                             )
        Plaintiff,      )
                             )
      v.                )   CIVIL ACTION 07-0199(JR)
                             )
ALBERTO GONZALEZ, et al.,  )
                             )
        Defendants.     )

------------------------------

## DECLARATION OF DARRYL PAYNE-BEY

In accordance with 28 U.S.C. § 1746, I Darryl Payne-Bey, make the following declaration under the penalty of perjury, pertinent to the above-style and numbered case.

1. I am a member of the Moorish Science Temple faith (Islamism) at Rivers Correctional Institution in Winton, North Carolina.

2. I was approved for kosher diet on 10-14-04 according to Rivers policy, RCI 15.003. I received a kosher diet at Rivers for a few days before I was removed from participation by Chaplain Brown. Chaplain Brown claims that he approved me for a vegetarian diet and I am not allowed a kosher diet because I am not a Jew. See attached GEO/RCI ATTEMPT AT INFORMAL RESOLUTION.

3. I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this _24_ day of July, 2007.

Respectfully submitted,

DARRYL PAYNE-BEY
CI Rivers
P.O. Box 630
Winton, NC 27986
Register No. 01505-007

## GEO/RCI ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

D-03-350 KJ
10-21-04

Date Rcv'd 10/22/04 KJ
(Staff)

To: MS. JOHNSON
(Counselor)

DARRYL PAYNE-BEY: 01505-007, D2-106

1.    Write in this space, briefly, your complaint. Include all details and facts which support your request.

I was approved for the KOSHER DIET-RELIGIOUS- ON 10-14-04 according to Policy No: RCI-15.003; ACA STANDARD(S): SUBJECT: SPECIAL DIETS, and Now I am being DISCRIMINATED against by Chaplain J. Brown, Kitchen officials Ms. D.J Grant, MS Freeman and MS. SCHWARTZ, as well as Mr. HEDSPETH by having and/or allowing my Religious KOSHER DIET to be taken from me after being approved, and having already began consuming this diet, Though it is the closest → DIET IN adherence to my Religious Belief. I pray for No RETaliation. Please approved →

2.    What action do you wish to be taken to correct the situation? → FORM ATTACHED.

THAT THIS DIET-KOSHER- WHICH WAS approved by the DESIGNATED Official IN AUTHORITY to Grant Such a Diet (Chaplain J. Brown) be returned to me -with All due respect to this official (3)- IMMEDIATELY, since the "Common Fare" DIET IS NOT SERVED HERE, OR UNTIL such time it can be offered here at RCI → COMMON FARE DIET THAT IS. AGAIN, I pray for No RETaliation - RESPECTfully

01505-007           D2-106           10-21-04
Inmate Name/Signature      Reg. No.          Unit/Bed           Date

3.    State Clearly staff efforts to resolve the matter informally. Be specific, but brief and provide to inmate.

An investigation of your complaint has revealed that you were approved for the religious diet as the participation form indicates. You were not approved for a Kosher diet that you made reference to in your specific notation for participating in the religious diet program. Your request cannot be granted.

*****************************************************************

The Informal Resolution Was (Was Not) (circle one) accomplished for the above noted reason.

10.29.04                    K. Johnson              10/27/04
Inmate Signature      Date        Counselor Signature        Date

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.                )
                                    )
            Plaintiff,              )
                                    )
        v.                          )   CIVIL ACTION 07-0199(JR)
                                    )
ALBERTO GONZALEZ, et al.,           )
                                    )
            Defendants.             )
--------------------------------

## DECLARATION OF DON WADE

In accordance with 28 U.S.C. § 1746, I, Don Wade, make the following declaration under the penalty of perjury, pertinet to the above-style and numbered case.

1. I am a prisoner, of the Muslim faith, at Rivers Correctional Institution in Winton, North Carolina.

2. I arrived at Rivers on October 18, 2006.

3. Rivers Chaplain Brown told me that I could Not receive Kosher meals, because I did not practice the Jewish faith.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this 23 day of July, 2007.

Respectfully submitted,

*Don Wade*

DON WADE
CI Rivers
P.O. Box 630
Winton, NC 27986
Register no. 24904-016

State of NC, County of Pasquotank
Signed before me on this 23rd day
of 2007 July by Don Wade.
Notary Public Rita C. Williams

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.       )
                      )
      Plaintiff,     )
                      )
      v.              )   CIVIL ACTION 07-0199(JR)
                      )
ALBERTO GONZALEZ, et al., )
                      )
      Defendants.    )
------------------------------

## DECLARATION OF MICHAEL ROCKINGHAM

In accordance with 28 U.S.C. § 1746, I, Michael Rockingham, make the following declaration under the penalty of perjury, pertinet to the above-styed and numbered case.

1. I am a prisoner, of the Muslim faith, at Rivers Correctional Institution in Winton, North Carolina.

2. I arrived at Rivers in 2004.

3. I was told by Rivers Chaplain Brown that only those of inmates of the Jewish faith are allowed kosher meals at Rivers, therefore I was denied kosher meals.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this 23rd day of July, 2007.

Respectfully submitted,

Michael Rockingham
CI Rivers
P.O. Box 630
Winton N.C. 27986
Register No. 26320-145

North
State of Carolina County of Hertford
Signed before me on this 23rd day
of July, 2007 by April 30, 2011.
Notary Public Cindy L. Vann

CINDY L. VANN
NOTARY
PUBLIC
HERTFORD COUNTY, N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOBBY RAY CURRY, JR.          )
                             )
        Plaintiff,           )
                             )
    v.                       )    CIVIL ACTION 07-0199(JR)
                             )
ALBERTO GONZALEZ, et al.,    )
                             )
        Defendants.          )
-------------------------------

DECLARATION OF TALIB ABDUL-WALI

In accordance with 28 U.S.C. § 1746, I, Talib Abdul-Wali, make the following declaration under the penalty of perjury, pertinent to the above-style and numbered case.

1. I am a prisoner, of the Muslim faith, at Rivers in Winton, North Carolina.

2. I arrived at Rivers in August 2004.

3. I received kosher meals in the BOP and Rivers Chaplain Brown told me that I could not get a kosher diet here because I am not of the Jewish faith.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on this 23 day of July 2007.

Respectfully submitted,

*Talib 'Abdul-Wali*

TALIB ABDUL-WALI
CI Rivers
P.O. Box 630
Winton, NC 27986
Register No. 11224-007

North
State of Carolina, county of Hertford.
Signed before me on the 23rd
July 2007 my April 20, 2011
notarial: Cindy J. Vann

CINDY L. VANN
NOTARY
PUBLIC
HERTFORD COUNTY, NC

**(EXHIBITS IN #3)**

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98
**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member)<br>**Ms. Wolfe (Food Service Manager)** | DATE:<br>February 5, 2007 |
|---|---|
| FROM:<br>**Bobby Curry** | REGISTER NO.: **11324-045** |
| WORK ASSIGNMENT:<br>**Education Tutor** | UNIT:<br>**B-2-206L** |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

It is my understanding that the only difference between a vegetarian
diet and a regular diet is that vegetarians receive cheese or peanut
butter in place of meat. I would like for you to verify whether this
is true and provide me with any additional information.

Thank you for your time and attention in this matter.

*Bobby Curry*

(Do not write below this line)

DISPOSITION:

The regular diet provides 100% of the recommended dietary allowances. (RDA'S) The vegi diet has the same foods except a protien substitute

| Signature Staff Member<br>*R. Roberson, RD* | Date<br>2-14-07 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)



This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94



# RIVERS CORRECTIONAL INSTITUTION
## AUTHORIZATION FOR RELIGIOUS DIET PARTICIPATION

## VEGETARIAN DIET

Name of Inmate: _Bobby Curry_    Housing Unit _B-1-115 U_

Register Number _11324-045_    Religious Preference _Santeria_

I voluntarily request authorization to participate in the Religious Diet Program (Vegetarian). I agree to comply with the program requirements. I understand that, if I am observed consuming mainline foods or violating other program requirements, I may be temporally removed from program participation and will not be eligible for immediate reinstatement. Repeated program violations may result in removal from the program for up to one year. I further understand that the same conditions for reinstatement may apply if I voluntarily withdraw form the programs for any reason.

I understand that I must have a recorded religious preference, and I must be actively attending/ participating in the religious services of my chosen faith , and that I must provide a written reason for requesting to participate in the religious diet program.

Are you presently participating in RCI's religious services of your chosen faith? _I practice my faith on my own._

If not please state your reason(s) _There is no Santeria religious program here._

Specific Motivation for participating in the Religious Diet Program:

Signature of Inmate _Bobby Curry_    Date _8 August 2005_

### Do Not Write Below this Line

You were interviewed for participation in the Religious Diet Program. Upon review of the responses given in the interview questionnaire, it was determined that you are:

Approved/Not Approved to participate in the mainline component of Religious Diet Program.

Signature of Chaplain _____    Date _8-11-05_

*Please check w/ Medical per your medical diet.*

Record Copy - Inmate Central File; Copy - Chaplaincy File; Copy - Inmate

(EXHIBITS IN #4)



U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons
Mid - Atlantic Region

Butner Legal Center
P.O. Box 1600
Butner, North Carolina 27509

December 13, 2005

James Byrams
Reg. No. 11381-007
Rivers Correctional Institution
P.O. Box 630
Winton, NC 27986

Re: Administrative Tort Claim Numbers:    TRT-MXR-2006-00082
                                          TRT-MXR-2006-00083

Dear Mr. Byrams:

This will acknowledge receipt on November 7, 2005, of your claims filed under the Federal Tort
Claims Act (FTCA), 28 U.S.C. § 2671, et seq., and authority granted under 28 C.F.R § 0.172.
Your claims allege that personal property was lost or stolen during your incarceration at the
Rivers Correctional Institution.

The FTCA provides a remedy against the United States for injury or loss of property, or personal
injury or death arising or resulting from the negligent or wrongful act or omission of any
employee of the federal government while acting within the scope of his office or employment.
Your claim alleges that your loss occurred when you were housed at the Rivers Correctional
Institution. Under the FTCA, the Rivers Correctional Institution not considered a federal agency,
and is therefore, not subject to the provisions of the FTCA.

This letter constitutes a formal denial of your claims. If you are not satisfied with this
determination, you may file suit in the appropriate U.S. District Court not later than six months
after the date of mailing of this notification should you wish to do so.

Sincerely,

Richard W. Schott
Regional Counsel

Exhibit 18

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Mr. Thomas R. Christensen (SSIm BOP) | DATE: 3 December 2005 |
|---|---|
| FROM: Bobby Curry | REGISTER NO.: 11324-045 |
| WORK ASSIGNMENT: Education | UNIT: B-1-115U |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary.  Your failure to be specific may result in no action being taken.  If necessary, you will be interviewed in order to successfully respond to your request.)

Is Rivers Correctional Institution a federal prison?

*Bobby Curry*

(Do not write below this line)

DISPOSITION:

Rivers Correctional Institution is owned and operated by The GEO Group, Incorporated.  It is a privately owned corporation that has a contract with the Federal Bureau of Prisons (FBOP)  to house inmates assigned to the custody and control of the FBOP.

| Signature Staff Member | Date 12/15/05 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

Printed on Recycled Paper

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                                    FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) Mr. John White / Records Manager | DATE: 16 Sept. 2005 |
|---|---|
| FROM: Bobby Curry | REGISTER NO.: 11324-045 |
| WORK ASSIGNMENT: Education Tutor | UNIT: B-1-1154 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.)

There was a mistake made when I was transferred and accepted into Rivers Correctional Institution. I am a military prisoner and in accordance with the Memorandum of Agreement between the FBOP and the Department of the Army, I am to be housed in the FBOP. I requested a transfer to either Butner or Petersburg and I don't understand why I was sent here. I respectfully request that I be transferred immediately back into the FBOP so I can receive those rights and privileges afforded FBOP prisoners. Thank you.

*Bobby Curry*

(Do not write below this line)

DISPOSITION:

The FBOP designated you to Rivers. If you believe this was a mistake you must contact them.
As a contract facility we accept any inmate designated to us over the age of 18.

| Signature Staff Member | Date |
|---|---|
| John White | 9-23-05 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

# Rivers Correctional Institution

DELIVERED OCT  1 2005

Date:       October 28, 2005
To:         Bobby Curry # 11324-045

This is in response to your Request dated October 24, 2005 in which you state that as a military prisoner you should be housed at a Federal Bureau of Prisons facility.

You were designated to this facility by the Bureau of Prisons.  Any questions regarding your designation should be addressed to them.

_11· 31-05_
Date

George Snyder
Warden

**(EXHIBITS IN #5)**

**STATUTORY GOOD TIME ACTION NOTICE**

U.S. DEPARTMENT OF JUSTICE                     FEDERAL BUREAU OF PRISONS

| Inmate's Name<br>CURRY, Bobby Ray | Register No.<br>11324-045 | Institution<br>FCI McKean |
|---|---|---|

### FORFEITURE/WITHHOLDING

| Infraction Date | | DHO Decision Date |
|---|---|---|
| Amount Forfeited (FF) | Amount Withheld (WH) | Month Withheld |
| Infraction Severity | | Infraction Frequency |

Reason for Forfeiture/Withholding

Discipline Hearing Officer:

### RESTORATION

| Amount Forfeited<br>330 days | Infraction Date<br>November 12, 1997 |
|---|---|
| Amount Withheld<br>N/A | Infraction Date<br>N/A |

| AMOUNT RECOMMENDED > FOR RESTORATION | Forfeited<br>180 days | Withheld<br>N/A |
|---|---|---|

Reason for Restoration
Inmate Curry has maintained clear conduct for the past 46 months, receives good to outstanding work reports, and is very active in the institution's education programs.

| Date of Recommendation<br>September 26, 2001 | Unit Manager |
|---|---|

Comments and Signature of DHO *Military Prisoner. Concur with Recommendation based on Clear Conduct while in BOP.* _Jack Kunk_, DHO, 09-26-01

Comments and Signature of CCS

| AMOUNT RECOMMENDED ><br>FOR RESTORATION *180 Days*<br><br>RECOMMENDATION DENIED ☐ | Forfeited (RFF) | Withheld (RWH) |
|---|---|---|

| Signature of Approving Official<br><br>John D. Lananna | Title of Approving Official<br>Warden<br>FCI McKean, Pennsylvania | Date<br><br>09-26-2001 |
|---|---|---|

| SENTRY Release Date Adjusted by: | | Date |
|---|---|---|

Record Copy - J&C File; Copy - Central File, (Section 1)

(This form may be replicated via WP)

Replaces BP-389(58) of OCT 88



**DEPARTMENT OF THE ARMY**
UNITED STATES DISCIPLINARY BARRACKS
COMBINED ARMS CENTER AND FORT LEAVENWORTH
300 MCPHERSON AVENUE
FORT LEAVENWORTH, KANSAS  66027-1363

Inmate Personnel Division                                    07 November 2001

Dear Wardens and Casemanagers:

1.  Attached you will find the Memorandum dated 27 September 2001 with the subject Authorization for Restoration of Good Time Credit. This Memorandum provides authority for Wardens of Federal Bureau of Prisons facilities, housing prisoners transferred by the U.S. department of the Army, to restore forfeited abatements.

2.  Enclosed you will find the letters/requests from inmates at your facilities requesting the restoration of their forfeited good conduct time. I regret the ill-timed manner in which these requests/letters are sent to you, but we were awaiting the approval notification that would allow you to restore the forfeited time.  If you have any questions please feel free to contact me at CML: (913) 684-4872/4715 DSN:  552-4872/4715.

Sincerely,

Deborah A. Blakney
Inmate Personnel Officer



**DEPARTMENT OF THE ARMY**
OFFICE OF THE DEPUTY CHIEF OF STAFF FOR OPERATIONS AND PLANS
400 ARMY PENTAGON
WASHINGTON DC 20310-0400

REPLY TO
ATTENTION OF

DAMO-ODL                                          27 September 2001

MEMORANDUM FOR Paul L. Taylor, Chief Policy Review and Development
(Military Liaison)

SUBJECT: Authorization for Restoration of Good Time Credit

1. We have received numerous requests through the United States Disciplinary Barracks at Fort Leavenworth, from DOD inmates housed in Federal Bureau of Prisons facilities, related to the restoration of forfeited abatements. Our regulation provides that the level of authority for restoring the abatements rests with the facility commander. Army Regulation 633-30, "Forfeited abatements, regardless of where forfeited, may be restored by the commanding officer of the installation where the prisoner is presently confined."

2. For the purpose of restoring forfeited abatements (Good Time Credit), Wardens of Federal Bureau of Prisons facilities, housing prisoners transferred by the U.S. Department of the Army, have the authority and discretion to restore forfeited abatements.

3. Point of contact for this memorandum is Michael Shannon CML: (703) 695-4357 DSN: 225-4357.

Encl
AR 633-30/AFR 125-30, 8a

MANOLITO GARABATO
COL, GS
Chief, Security, Force
     Protection and Law Enforcement Division

**R.7**  ·    E. 4

MAR-21-2002  07:33        DAMO ODL 703 693 6580                703 693 6580    P.03/03



**DEPARTMENT OF THE ARMY**
UNITED STATES DISCIPLINARY BARRACKS
COMBINED ARMS CENTER AND FORT LEAVENWORTH
300 MCPHERSON AVENUE
FORT LEAVENWORTH, KANSAS 66027-1363

REPLY TO
ATTENTION OF:

ATZL-DB                                                             1 1 MAR 2002

MEMORANDUM FOR HQDA (DAMO-ODL ATTN: LTC JONES), 400 ARMY
PENTAGON, RM BF758, WASHINGTON, D.C. 20310-0400

SUBJECT: Exceptions to Army Regulation 633-30, Military Sentences to Confinement

1. Request an exception to policy for paragraph 8 of Army Regulation 633-30, to authorize
the commander of the facility where the prisoner is presently confined to restore forfeited
abatements, regardless of where forfeited. Currently, the regulation authorizes the installation
commander to restore forfeited abatements.

2. Additionally, request an exception to policy for paragraph 8 of Army Regulation 663-30, to
authorize the Commandant, USDB, to restore forfeited abatements, regardless of where
forfeited, to those prisoners who have been transferred to the Federal Bureau of Prisons and
are under the administrative control of the USDB. The current regulation is silent as to that
authority.

3. These actions will allow the facility commanders to be more responsive to requests for
restoration of forfeited abatements and allow a more timely response to the Federal Bureau of
Prisons.

4. The point of contact for this action is LTC Grande, Chief of Staff, DSN 552-3341 or (913)
684-3341.


                                        STEVEN L. ANDRASCHKO
                                        COL, MP
                                        Commandant


                                                                    R.8    .   Ex 5



DEPARTMENT OF THE ARMY
OFFICE OF THE DEPUTY CHIEF OF STAFF FOR OPERATIONS AND PLANS
400 ARMY PENTAGON
WASHINGTON DC 20310-0400

REPLY TO
ATTENTION OF

DAMO-ODL

18 March 2002

MEMORANDUM FOR Commandant, United States Disciplinary Barracks, Fort Leavenworth, Kansas 66027

SUBJECT: Exceptions to Army Regulation 633-3, Military Sentences to Confinement

1. Your request for an exception to Army Regulation 633-30, paragraph 8, to allow the commander of the facility where the prisoner is presently confined to restore forfeited abatements, regardless of where forfeited, is approved.  Additionally, your request to allow the Commandant of the USDB to restore forfeited abatements, regardless of where forfeited, of inmates who have been transferred to the Federal Bureau of Prisons and are under the administrative control of the USDB, is approved.

2. These exceptions take effect immediately and will remain in effect for three years from this date, unless superceded or rescinded.

3. Point of contact is LTC Jones, DSN 225-8832/8599 or COM (703) 695-8499/8823.

MANOLITO GARABATO
COL, GS
Chief, Security, Force
    Protection, and Law Enforcement Division

R.9



**DEPARTMENT OF THE ARMY**
UNITED STATES DISCIPLINARY BARRACKS
UNITED STATES ARMY COMBINED ARMS CENTER AND FORT LEAVENWORTH
1301 NORTH WAREHOUSE ROAD
FORT LEAVENWORTH. KANSAS  66027-2304

REPLY TO
ATTENTION OF:

ATZL-DB                                                    14 Apr 2004


MEMORANUM FOR Bobby Curry, Federal Register Number 11324-045,
Federal Correctional Institution, Post Office Box 8000, Bradford,
PA 16701-0980

SUBJECT:  Forfeited Good Conduct Time and Meritorious Good Time


1.  This is in response to your letter dated March 29, 2004,
requesting restoration of your forfeited good conduct time and
meritorious good time.


2.  You forfeited good conduct time at the United States
Disciplinary Barracks because of violations of the institutional
rules and unacceptable behavior.  The Commandant does not plan to
return anymore forfeited good conduct days to you.  You are
receiving good conduct days for your good behavior in the Federal
Bureau of Prisons.  Continue to conform to their institutional
rules.


                              PETER J.  GRANDE
                              LTC, MP
                              Acting Commandant

| Inmate's Name<br>**Bobby Curry** | Register No.<br>**11324-045** | Institution<br>**Rivers Correctional** |

### FORFEITURE/WITHHOLDING

| Infraction Date | DHO Decision Date |
|---|---|

| Amount Forfeited (FF) | Amount Withheld (WH) | Month Withheld |
|---|---|---|

| Infraction Severity | Infraction Frequency |
|---|---|

Reason for Forfeiture/Withholding

Discipline Hearing Officer:

### RESTORATION

| Amount Forfeited<br>**330 days** | Infraction Date<br>**October 23,1998** |
|---|---|

| Amount Withheld<br>**N/A** | Infraction Date<br>**N/A** |
|---|---|

| **AMOUNT RECOMMENDED > FOR RESTORATION** | Forfeited<br>**90 days** | Withheld<br>**N/A** |
|---|---|---|

Reason for Restoration
**Inmate has maintained clear conduct since arrival here at RCI on 06-29-2005.**

| Date of Recommendation<br>7/14/06 | Unit Manager<br>*L. H. Johnson* |
|---|---|

Comments and Signature of DHO

Comments and Signature of CCS

| **AMOUNT RECOMMENDED > FOR RESTORATION**<br>60 days | Forfeited (RFF)<br>*60 days* | Withheld (RWH) |
|---|---|---|

**RECOMMENDATION DENIED** ☐

| Signature of Approving Official | Title of Approving Official<br>*Assistant Warden* | Date<br>*B-10-06* |
|---|---|---|

| SENTRY Release Date Adjusted by: *Mailed to Ft. Leavenworth Barracks C Harrell* | Date: *8/14/06* |

Record Copy - J&C File; Copy - Central File, (Section 1)

(This form may be replicated via WP)                    Replaces BP-389(58) of OCT 88

**DEPARTMENT OF THE ARMY**
**OFFICE OF THE PROVOST MARSHAL GENERAL**
2800 ARMY PENTAGON
WASHINGTON DC 20310-2800

DEC 1 3 2006

REPLY TO
ATTENTION OF

Operations Division

Prisoner Bobby Curry 11324-045
P.O. Box 630
Winton, North Carolina  27986

Dear Prisoner Curry:

This letter is in response to your September 21, 2006, letter to the Secretary of the Army.  In your letter, you requested the Commandant, United States Disciplinary Barracks (USDB) be directed, "...to return all of my forfeited good time (136 days), and to direct the Commandant to grant all restoration provided by Wardens who housed military prisoners in the future."

The Commandant of the USDB is the authority in this matter.  The Under Secretary of Defense for Personnel and Readiness clarified DoD policy by his memorandum subject; Department of Defense policy on Abatement of Sentences to Confinement memorandum, dated September 17, 2004, stating at paragraph A7.2., "Forfeited GCT, ET, and SAA may be reinstated at the discretion of the corrections facility commander or, in the case of prisoners transferred to the FBOP, the Commandant of the USDB."

I will forward a copy of your letter to USDB Commandant for his consideration.

Eugene A. Smith
Colonel, U.S. Army
Chief, Operations Division

CF:
Commandant, USDB